BREAUX, C. J.
This is an expropriation suit.
The strip of land plaintiff seeks to expropriate is in the’ city of Natchitoches. It measures about 70 feet in width and about 200 feet in depth.
Plaintiff alleges that it is necessary for a switch to connect its road with a depot that plaintiff intends to build near Amulet street in Natchitoches.
There are two defendants.
Plaintiff alleges that each claims the land as owner.
Widow J. A. Ducournau, personally and as tutrix, and the heirs of age of the late J. A. Ducournau and children of Mrs. Ducournau seriously object to the proposed expropriation, and file several exceptions on different grounds.
Those grounds having direct bearing will be considered in deciding the case.
She and her ancestors in title have been in possession over 30 years.
She pleads prescription.
■ The strip of land that plaintiff seeks to expropriate runs through property which is the home of Widow J. A. Ducournau and her children.
She alleges, substantially, that this road passing through her home lot will be very damaging; that it will increase the danger of fire; the unavoidable noise will be a nuisance; the smoke and cinders from the locomotive will be ruinous; that she has a vegetable and flower garden on her lot which she will lose; that the former is very useful, as it produces vegetables the whole year— quite an object in her large family.
Her contention is that the lot is not subject to expropriation, because it forms part of the yards and gardens of her home; that under the law it is not the intention that such property shall be taken from the owner, particularly as it is not in the interest, as she contends, of the public.
Her contention further is that the line of railway can easily be made to run to the south of her home at some little distance; there is an open space in the direction which she suggests, where owners of homes will not be inconvenienced and subject to the ruin of their homes.
In insisting that the line should run south *393 of her home place, she champions not only her own rights, but those of the city, in that she alleges that plaintiff violates a contract entered into by it with the city to select a right of way south of her home, as just mentioned; that the grant of franchise was conditioned upon such a line of road, and that in granting this franchise the city stipulated that if plaintiff violated any part of it it would thereby forfeit its rights to the franchise.
Defendant further contended in the alternative that, if the expropriation is limited to 20 feet (the number of feet to which she, defendant, wishes to limit the width' of the road in case plaintiff is entitled to expropriation at all) by 200 feet in depth, then the land sought for the track is worth $2,100.
Defendant claims that in addition her property would be damaged to an amount at least of $-1,300; in addition she claims damages for the nuisances that will result in the sum of $1,500.
Defendant then takes up the width of 70 feet, which is the width plaintiff claims for its road, and alleges that in that case the amount of the damages for the strip by the depth of the lot, some 200 feet, would be $4,000, and the other damages are fixed at $1,000.
Defendant concludes, as relates to damages, that there is no necessity for over 20 feet in width; that to claim a larger width, if granted, would be a great imposition.
She also pleads estoppel growing out of the fact that one of the employes of plaintiff road made some sort of proposition of compromise, which, by the way, never went into effect and never was accepted.
On the question of expropriation, the verdict was in favor of plaintiff.
The jury allowed $2,000 to be paid to Mrs. Ducournau and her children.
The other defendant was J. J. Nelson, to whom nothing was allowed, as it urns not considered, as we infer, that he had any title.
J. J. Nelson, the defendant, moved for an appeal, and filed a brief on appeal.
Defendant Mrs. J. A. Ducournau answered plaintiff’s appeal, and asked for a reversal of the judgment and for the rejection of plaiñtiff’s demand; she added that, if the judgment was not reversed, then defendant asked that the expropriation be limited to a width of 20 feet of the land, running along the line on Amulet street; and defendant prayed for an increase of the amount allowed as damages.
The amount allowed as damages was deposited by plaintiff as required, subject to the claim of the owner.
In the order of the issues presented, we in the first place determine that plaintiff had a right to expropriate. There is no question but that a sufficient number of feet can be expropriated for a switch connecting plaintiff’s road with its depot; it being necessary to construct a switch, in order to reach the depot both with its passenger and freight trains.
The issue, then, is the difection which the line should follow.
More than ordinary facilities are required, we understand, because there will be on this switch what is known as a X (wye).
[1] The next question for decision is whether the switch should run south of defendant’s home, thereby avoiding it entirely, or north and over part of defendant’s land.
The testimony was a little animated upon the subject. Those who thought that a southern direction should - be followed were decidedly of that way of thinking. They expressed themselves in a most positive manner.
The evidence favorable to the south track to the switch, for which the defendant contends, is.not as full of detail as the testimo *395 ny in support of the north side, for which the plaintiff contends.
A local surveyor of experience, who resides in Natchitoches and knows the situation very well, and has been connected with the surveys in that particular locality, testified that it was absolutely necessary to follow the line on the north side; that the other line would not he at all satisfactory to the public nor to the road.
There is a plat of survey in evidence upon which the two lines are drawn, a red lino and a black line. He swore that the red line on this map is entirely impracticable; he gave figures to prove its impracticability.
Although his statement was emphatic, direct, and to the point, no one attempted to refute it.
The members of the jury, familiar, doubtless, with the location, heard him testify, believed his testimony, and in effect decided that the line should be as he stated.
This jury had an idea of the lay of the land and of the direction of the lines from personal observation.
After having carefully examined the two maps in question and the testimony, we have arrived at the conclusion that there was no error in selecting the northern line.
[5] The next contention of defendant is that plaintiff has really forfeited its franchise, for the ordinance under which it holds provides, as before stated, that the line shall be on the south line.
Defendant encounters a difficulty here. The ordinance above referred to was not copied in the transcript. It was passed in silence, except that it is suggested in the brief, should the court come to any other conclusion than that suggested by defendant’s pleas, then the court should order the clerk to produce a copy of the ordinance.
Conceding that it is as contended by defendants, although there is no evidence of the facts before us, if the authorities of Natchitoches think that this ordinance has been violated, they have it in charge to compel all persons and corporations to comply with ordinances. The defendant in this suit cannot be heard to invoke the rights of the municipality.
We will here mention that a committee, representing the authorities, met the officers of the plaintiff road on the ground; they conversed and debated about the proper line to follow.
We understand that the members of the committee were not entirely in accord.
One of the officers of the plaintiff road was exuberant in speech. In talking to one of the members of the committee, he talked of the beautiful mall near the depot; that the railroad people would fill the whole of the bayou, place culverts at proper distances, and make other improvements.
This talk, it is said, all related to the strip along the southern direction, and, from that, inference was arrived at that the road had committed itself to this southern line.
This all ended in talk; nothing was determined. At any rate, nothing was definitely decided.
Defendant with some insistence returns to the first proposition, and earnestly insists that under article 2637 of the Civil Code plaintiff is absolutely without right to expropriate the property, because it asks to expropriate part of the yard, garden, and other appurtenances, and that, as defendant contends, it does not appear that the line of the proposed railroad cannot be diverted from that proposed without great public loss and inconvenience.
This last clause is made by law a condition in matter of expropriation. That is that the property may be expropriated, if the jury finds that it is absolutely necessary; that was the issue presented to the court, that it was absolutely necessary; and that was *397 the issue covered by the verdict which condemned the property to expropriation. The necessity for not diverting the line as asked for by defendant Mrs. Dueournau is covered by th.e verdict.
A part of a large garden or of a large yard may be more readily expropriated than the whole of a small garden or the whole of a small yard near a dwelling house, which seems to have been contemplated by those who adopted the article of the Code.
In the latter case the hardship would be so much the greater, and the breaking up of the home would be quite evident.
Here, such is not the ease, as we read the testimony, although it would be preferable if the owner could avoid having such a noisy and disagreeable neighbor at different hours of the day.
[2] Now as to the value of the property and the damages — another subject of discussion:
The lower limit of value was not adopted by the jury, nor the highest.
The plaintiff’s witnesses place a low estimate on the property and damages, while the estimate of defendant’s witnesses is high.
The jury had specially good opportunity to judge as to the value of the property and the amount of damages. The property is within the limits of the town, and not far from where the jury met.
[3] After having considered the testimony and the weight to be given to the jury’s finding under the circumstances, the amount will not be changed, except in the following respect: The width of the tract
for the switch is reduced to 50 feet, instead of 70 feet.
There was a mention made in argument about a proposed compromise, in which it was said that 30 feet would be accepted.
The statement in argument will not be taken as a basis for fixing the limit of the width of the switch.
It is generally known — indeed, we think that it is common knowledge almost, if not entirely so — that a 100-foot tract is generally accepted in the country for a railroad tract, and 50 feet in the city. For that reason, we reduce the number of feet as before mentioned.
There were other points advanced by the defense which we have considered, although not expressly mentioned, as we did not conceive that there was any necessity for such a mention. They are covered and disposed of by other grounds decided.
But there is another point left which we must consider.
Under the terms of the judgment, the money must be paid to the Dueournau defendants.
As between plaintiff and defendants, defendants (Dueournau) are entitled to the amount by reason of the fact, mainly, that plaintiff sued the Ducournaus and Nelson as claiming as owners.
As to Nelson, he had no right to the property. He made that admission as a witness. He has no interest. It follows that the money must be paid over to the one who proved that she was best entitled to the proceeds. The defendants (the Ducournaus) by proof of possession, by prescription and title introduced in evidence, show a prior right to the property in these proceedings.
[4] For reasons stated, it is ordered, adjudged, and decreed that the judgment appealed from be amended by reducing the switchway to 50 feet, and with this amendment it is ordered, adjudged, and decreed that the judgment is affirmed. And it is further ordered, adjudged, and decreed that the plaintiff pay the costs of appeal.