No. 627

First Circuit

LOUISIANA HIGHWAY COMMISSION v. CORMIER ET AL.

(April 14, 1930. Opinion and Decree.)
(May 6, 1930. Rehearing Refused.)
(July 2, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

Lewis L. Morgan, of Covington, attorney for plaintiff, appellant.

Dubuisson, Perrault & Burleigh, of Opelousas, attorneys for defendant, appellee.

MOUTON, J.   The defendants are the owners of a tract of land of 150 acres situated in the parish of St. Landry.

Plaintiff is now constructing a hard-surface state highway, being route No. 7, as designated under section 7 of Act 95, Ex. Sess. of 1921, and the amendatory Acts No. 236 of 1924, No. 330 of 1926 and No. 294 of 1928.

The tracks of the Missouri Pacific Railroad run westward from Krotz Springs in the parish of St. Landry to a railroad station called Port Barre station on the line of that railroad.   The proposed highway in route No. 7, which plaintiff is building, runs north of and parallels the railroad tracks from Krotz Springs to the Port Barre Railroad Station.   The tract of land of the defendants is located between Krotz Springs and the Port Barre Station.   Plaintiff alleges that it must have a right of way 80 feet wide across the land of the defendants for the construction of the highway to the Port Barre Station.

The village of Port Barre is situated north of the Port Barre Station and of the line of the proposed highway which is adjacent to, and north of, the tracks of the Missouri Pacfiic Railroad.   The southern corporate limits of the Port Barre village are at a distance of half a mile north of the Port Barre Station.

The Legislature, under the Constitution of 1921, was directed to provide for the establishment and maintenance of a system of hard-surface state highways.   The Legislature, acting in obedience to the constitutional mandate (art. 6, sec. 19), by Act 95 of 1921, extra session, created a system of hard-surface state highways for the state, and at the same time a highway commission to carry out the provisions of the act which was subsequently amended but without modification of section 7 of Act 95, Ex. Sess. of 1921, with which we are presently concerned.

The part of that statute pertinent to the issue presented for solution reads as follows:

"The said Highways shall extend, as nearly as possible, along the following described routes, the more specific and detailed locations shall be determined by the Louisiana Highway Commission, and in such manner as shall be prescribed by law, but in fixing such definite and detailed routes, said Highways shall touch the various cities, towns and villages named here-

in as points through which such routes are to pass. Provided the location and designated routing of State Highways as herein made may be altered and amended by the Louisiana Highway Commission to such an extent and in such manner as may be necessary to meet any requirements that may be made by the Federal Government in granting aid in road construction."

Route No. 7 is designated in the act as follows:

"Beginning on the Mississippi State line north of Angie through Bogalusa, Covington, Hammond, Albany, Holden, Livingston, Walker, Denham Springs, Baton Rouge, Port Allen, Rosedale, Livonia, Krotz Springs, Port Barre, Opelousas, Eunice, Elton, Kinder, Fulton, De Quincy, thence to Texas line."

There is no aid granted in the instant case by the federal government for the construction of the projected highway through the land of the defendants, and the proviso in the last paragraph of the first above quotation has therefore no application.

The vital question presented for decision is as to whether or not the plaintiff highway commission has the power to expropriate defendants' property for the construction of the proposed highway.

It may be stated here that the plaintiff commission derives its power of expropriation from the provisions of Act 95, Ex. Sess. of 1921.

In connection with the foregoing statement, it is not amiss to say that, as was said in Orleans-Kenner E. Ry. Co. vs. Metairie Ridge Nursery Co., 136 La. 968, 68 So. 93, this power of expropriation is in derogation of common right, and must be strictly construed.

When this power is granted, as is well said, in Ruling Case Law, vol 10, sec. 168,

the extent to which it may be exercised is limited to the express terms or clear implication of the statute conferring the authority.

With these preliminary remarks in reference to the power of eminent domain, we shall proceed to the interpretation or construction of the provisions of section 7 of said act, hereinabove reproduced, the proviso excepted.

That section begins by saying that:

"The said Highways shall extend, as nearly as possible, along the following described routes."

In this expression of the statute it is obvious that the Legislature did not intend that the highway commission was required to scrupulously follow the designated routes. The language used implies that some discretionary authority was vested in the commission in extending these highways, along the routes marked out in the act, "as nearly as possible."

Following the above excerpt from section 7, a change of thought seems to appear in the act wherein it is stated that, in fixing the definite and detailed routes, the highways "shall touch the various cities, towns and villages named herein * * * through which such routes are to pass." Here again it must be observed that, after saying these highways shall "touch" the cities, towns, and villages, the act says, "through which such routes are to pass." The fixing of the "more specific and detailed locations" which obviously refers to the highways is, under the provisions of that section of the act, left to the determination of the highway commission. These highways, as thus fixed, are required to "touch" these various cities, towns, and villages.

The object of the Legislature in enacting Act 95, Ex. Sess. of 1921, was for the

establishment of a system of hard-surface state highways. Evidently, these highways were projected principally for the benefit of the traveling public. They were certainly not intended for the development of the various cities, towns, and villages along the designated routes. The incidental benefits that might accrue to them was, no doubt, a secondary consideration with the Legislature. As the interest of the general traveling public, as we appreciate the act, was the primary consideration involved, it may be entirely safe to say that the most important factor to be taken into account was the one of speed for the convenience or interest of the traveler over these highways. To attain that purpose, it cannot be denied that these highways, if possible, should be built on straight lines. It is manifestly the evident purpose of the commission to build on a direct line, as it is proceeding straight westward immediately north of the railroad tracks to the Port Barre Station, which is located one-half mile south of the corporate limits of the village of Port Barre. The fact is that the station is so near the village that it bears the same name, and it is extremely doubtful that the Legislature knew it was outside the village.

The real issue revolves around the proper interpretation of the word "touch" used in the statute. There can be no doubt that the commission, under the "express terms" of the statute, would have the power of expropriating the defendants' property if it deviated from a straight course, curved slightly to the northwestward, "touched" or went "through" with the highway along the southern corporate limits of the village of Port Barre.

The question then arises, What did the Legislature mean by using the word "touch"? Did it intend that its literal meaning should be applied, and that the Highway should have actual "contact" with the corporate limits of the village?

We do not believe that it had such an abortive purpose in view by thus forcing a curved highway at the expense of speed in traffic or transportation, increase in expenditure of funds, and safety in traveling. It is doubtful if the towns and villages referred to are incorporated or not. It may be that some are mere settlements. If such be the case, which is very likely, the word "touch" employed in the act becomes somewhat of a puzzle in ascertaining the legislative intent. We make this observation because if any of these villages have no corporate limits it would be rather difficult to say with any degree of certitude how they could be "touched" by the highway. This view gives additional elasticity to the application of that word, and authorized a broader meaning in the interpretation of the legislative purpose. We think that its proper application would be to say that the building of the highway in touch or in close proximity to these towns and villages so that it would be easily accessible falls within the purview of the statute.

Counsel for defendants seems to contend that the contemplated highway should follow the old road along the banks of Bayou Courtableau northwestward through the village of Port Barre, and then southwestward back to the railroad tracks which run westward to Opelousas. There is certainly nothing in the express terms of the statute nor deducible by "implication" from its provisions that could compel the commission to follow the circuitous route suggested by counsel. The power conferred on the commission to determine the "more specific and detailed locations" unquestionably carries with it the discretionary

right in the commission to build the highway on such a line as it might think proper between the points designated in the act. The privilege of so constructing a highway involves a question of mere administration with which the courts will not interfere, unless there be a gross abuse of authority. Claiborne vs. Louisiana Highway Commission, 154 La. 743, 98 So. 172.

There is also a practical view to be taken of this case from the facts which have developed during the trial.

As it appears that the commission in going to the Port Barre Station was looking to the straightest route, it is therefore apparent that, if it should be forced to a deflection of the highway, it would swerve it only a little in a northwesterly direction so as to skirt along within the corporate boundaries of the village in order to "touch" it, as provided for by the express terms of the statute.

We say the consideration of the case from that angle presents a practical question because it is not disputed that, if the roadway would be thus deviated from its present course, the highway would, however, go through the lands of the defendants. It is therefore plain that, whether the highway is built on the line now contemplated, or be made to swerve as above indicated, it would be of the same consequence to the material interests of defendants, who therefore appear in this litigation as being prompted by capricious, whimsical, or captious objections, and, in reality have no appreciable interest at stake.

It may be said that as a general proposition judges deal with questions affecting the rights of the litigants in their courts, and should not look to the consequences which may result from their adjudications.

This is not, however, universally true. In a case of this character involving the construction of a statute affecting the general interest of the traveling public, we think the palpable results of a judgment can legitimately be taken into account as an essential element in properly determining the controversy.

Counsel for plaintiff commission contends that in expropriation proceedings of a railroad company defendant cannot urge that it has forfeited its charter for failure to observe a city ordinance under which it holds its authority, referring in support of that contention to Louisiana & N. W. R. Co. v. Nelson, 128 La. 390, 54 So. 917. Such a defense, the court held there, belonged to the city. The franchise evidently had been granted by the city, and its forfeiture, as was held by the court, could not be claimed by defendant for the non-observance of a city ordinance. The court, however, in that case said that the railroad company had the right of expropriation.

Here the power of expropriation is in dispute as the sole issue, and we are of the opinion that the 128 La. case has no application. The contention boiled down to its real issue is as to whether the commission has exceeded its powers of expropriation.

In Corpus Juris, 20, sec. 121, p. 641, it is there stated, and we think correctly, that the owner of property may raise the objection that in exercising its powers of eminent domain the condemning corporation has exceeded its authority.

We trust that our reasonings in the foregoing consideration of the question at issue make it quite clear that our views are that the right to construct the highway through the Port Barre Station is not granted to the commission by the express

terms of the statute. Our discussion has been directed altogether to the language employed in section 7 of the act, which has invested the commission with the right to expropriate. In considering that section, we have not failed, at the same time, to bear in mind the rule recognized in Orleans-Kenner E. Ry. Co. vs. Metairie Ridge Nursery Co., 136 La. 968, 68 So. 93, to which we have referred, in which it is said that the power of expropriation must be strictly construed. The rule does not mean, however, that this right must be expressly conferred. If it appears to be conferred by "clear implication," as is stated in Ruling Case Law, above referred to, the right may be inferred without doing violence to the doctrine requiring strict construction.

In reaching our conclusions, we have not overlooked the provisions of article 13, Civil Code, which says:

"When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit."

The letter of the law as it is expressed in section 7 of the statute conferring on the commission the power to expropriate is certainly not clear and far from being free of all ambiguity. On the contrary, it is rather hazy, and seems to intend to confer on the commission some discretionary authority as to the location where these highways should be established to which reference is hereinabove made. Hence, in our endeavor to ascertain the Legislative purpose in the enactment of the statute, we cannot be charged with disregarding the letter of the law, "under the pretext of pursuing its spirit." We think, as before stated, that in the construction of these roads, highways built on direct or straight lines were intended in the interest of economy, convenience, and safety, and that the Legislature was not looking primarily to the benefit of the cities, towns and villages along the proposed routes; that, if constructed in close proximity, touching and within easily accessible distances from these various towns and villages, the purpose of the law would be fulfilled. We therefore hold that plaintiff commission had the power "by clear implication" to expropriate the land of the defendants, and that the judgment below dismissing its suit is erroneous.

It is therefore ordered, adjudged, and decreed that the judgment be annulled, avoided, and reversed; that this case be and is hereby remanded to be proceeded with according to law; cost of appeal to be paid by defendants, those of the lower court to abide the decision of the case.

ELLIOTT, J. (dissenting). The main facts of the case will appear by reference to the opinion of the majority of the court.

The statute provides:

"The said Highways shall extend, as nearly as possible, along the following described routes, the more specific and detailed locations shall be determined by the Louisiana Highway Commission, and in such manner as shall be prescribed by law, but in fixing such definite and detailed routes, said Highways shall touch the various cities, towns and villages named herein as points through which such routes are to pass. Provided the location and designated routing of State Highways as herein made may be altered and amended by the Louisiana Highway Commission to such an extent and in such manner as may be necessary to meet any requirements that may be made by the Federal Government in granting aid in road construction." (Act No. 95, Ex. Sess. 1921, sec. 7.)

Then follows an enumeration of the cities, towns, and villages which the created

and designated highways shall touch, and through which they are to pass, by direct-tion of the act, the one in question: "Be-ginning on the Mississippi State Line north of Angie, through Bogalusa, Covington, Hammond, Albany, Holden, Livingston, Walker, Denham Springs, Baton Rouge, Port Allen, Rosedale, Livonia, Krotz Springs, Port Barre, Opelousas, Eunice, Elton, Kinder, Fulton, De Quincy; thence to Texas line."

In view of this precise legislative direc-tion, I take the position that the high-way commission has no discretion as to Port Barre. The federal government is not granting any aid in the construction of this road. There are no engineering diffi-culties in the way. See the provision which concludes the **Act 294 of 1928, on** page 622.

The act is clear and free from all am-biguity as to Port Barre. And, "when a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit." Civil Code, art. 13.

I am not aware of **any legal writer who** has handled the subject of interpreting statutes with more learning than Dwar-ris. The author has in mind, of course, the acts of Parliament, but the principles taught are as applicable here as in Eng-land. For the purpose of a dissenting opinion, a few words from a large subject-matter is believed to be sufficient:

"In interpreting the law, judges are to explore the intentions of the Legislature; yet the construction to be put upon an act of Parliament must be such as is war-ranted by, or at least not repugnant to, the words of the Act." Potters Dwarris, Subject: Construction of Words, c. 7, p. 203, et seq.

The subject of construction is continued at length, in the work last cited, both be-fore and after the quotation cited, but it may be all summed up with what has been quoted from our Civil Code. There is some difference in effect. An act of Parliament as I understand, may not be set aside on constitutional grounds, but the rule of in-terpretation, when it comes to giving ef-fect to what is plainly stated in an act, is the same in this country.

I think the opinion of the majority of the court fails to give effect to a legisla-tive provision, the meaning of which is plain, that this highway is to pass through Port Barre.

The power to expropriate, except for the purpose of passing through Port Barre, is not conferred on the plaintiff.

It is an elementary principle that the power to expropriate, as stated in Orleans-Kenner E. Ry. Co. vs. Metairie Ridge Nur-sery Co., 136 La. 968, 68 So. 93, is special and exceptional in character and in dero-gation of common right. The lawmakers are supposed not to give the right, except when it is found necessary for the public good. Civil Code, arts. 2626, 2627.

In Ruling Case Law, 10, sec. 168, we find the following statement on this subject:

"A grant of the power of eminent do-main, which is one of the attributes of sovereignty most fraught with the possi-bility of abuse and injustice, will never pass by implication, and when the power is granted, the extent to which it may be exercised is limited to the express terms or clear implication of the statute in which the grant is contained."

It appears to be the established fact that the settled purpose of the highway commission in claiming this expropriation is to not "touch" nor "pass through" Port Barre.

If the plaintiff commission had followed the course designated under section 7 as amended by section 1 of Act 294 of 1928, it would have the right to expropriate for that purpose, but, as such is not the case, the power does not exist.

Counsel for plaintiff refers to Louisiana & N. W. R. Co. v. Nelson, 128 La. 390, 54 So. 917. In that case the right to urge the forfeiture of the franchise granted the railroad company rested with the city which had the power to compel obedience to the ordinance, and not with the defendant. I do not think this situation the same; therefore the case, in my opinion, is not controlling.

In Corpus Juris, 20, sec. 121, p. 641, it is said:

"The owner of property to be taken or affected by the exercise of the power of eminent domain may raise the objection that the condemning corporation or body is exceeding its powers."

In Hennen's Digest, vol. 2, p. 1578, No. II, the right of a citizen to his property is referred to:

"As the highest of all public rights, and one which all men have the deepest interest in vindicating and maintaining."

It is a fundamental right which cannot be taken from him, except under a delegation of authority from the sovereign power.

In this case, if the commission had never been invested with the power of expropriation, it certainly could not expropriate defendants' property, and defendants would unquestionably have had the right to urge this total want of authority. Here the Commission has authority, but only for the purpose of the route specially designated by the statute. Evidently the duty which was imposed on the commission to build the highway so that it might "touch" or "go through" the cities, towns, or villages cannot be classified as "detailed locations," referred to in the act.

I think the judgment appealed from correct, and that it should be affirmed.

I therefore respectfully dissent.

## ON APPLICATION FOR REHEARING

MOUTON, J. In their application for a rehearing, counsel for defendants say that the language of the statute conferring the power of expropriation on the highway commission is plain and unambiguous. In our original opinion we referred to that part of section 7 of the statute which says, the "highways shall extend, as nearly as possible, along the following described routes" which are thereafter designated. In discussing our opinion in reference to that clause of the statute, counsel say we ought to interpret it under the familiar rule of statutory construction and that we should give effect to the specific provision of the statute which requires that the highways should pass through the cities, villages, and towns named. The trouble with the argument of counsel on this proposition is that the statute nowhere says that the highways shall "pass through" these cities, etc., but only says in one part that they shall touch them and in the other that they shall be laid "as nearly as possible along" the routes.

The word "route" may be used in a different and more general sense than the word "highway." It is sometimes used to mean a course, a line of travel or transit. It may be that the members of the Legislature knew that an old line of travel ran from the Mississippi boundary to the Mississippi river and across from there towards Opelousas and further on westward.

In a broad and general sense they probably merely intended to outline the route through the towns and villages mentioned in the act. When the statute refers, however, to the highways proper, it is more specific, and says they shall "extend along these routes, as nearly as possible," and "shall touch" these various villages, cities, but not that the highways shall go through them, as it is provided for in reference to the routes. Evidently, the words "route" and "highway" are not used in the statute as meaning the same thing; otherwise the statutes would not say that the highways should be laid nearly as possible along these routes. If they were used in that way, we would have the Legislature saying that the highways should run along the highways, "as near as possible." It is therefore not said in the statute that the highways should go through these towns. Counsel are therefore not supported by the statute in their contention that we should apply the familiar rule of statutory construction, and give effect to the specific provision of the statute, which they say requires that the highways should pass through these cities and villages. As the statute does not so provide, this rule of interpretation is inapplicable.

To counsel it seems from their argument that the language of the statute is entirely clear and free from all ambiguity, but we must confess that it is rather perplexing to us for the reasons above expressed, and those given in our original opinion. We therefore think that we cannot be justly charged with disregarding the letter of the law in our endeavors to ascertain what was the real purpose of the Legislature in conferring the authority on the commission to build a system of hard-surfaced state highways, all of which was discussed in our first opinion.

Counsel refer to several authorities in support of their contention that by our construction of the statute we are departing from our judicial functions, and usurping the authority of the lawmaking power. Among these citations counsel copy section 218 in 25 R. C. L., p. 963. In that quotation from that section, we find the following:

"There is a marked distinction between liberal construction of statutes, by which courts, from the language used, the subject-matter, and the purposes of those framing them, find out their true meaning, and the act of a court in ingrafting upon a law something that has been omitted, which the court believes ought to have been embraced."

In our original opinion, our sole purpose, as may be seen by reading it, was to ascertain as best we could, the meaning of the statute from the language used therein, the subject-matter, and what appeared to us to have been the purpose of the Legislature in the enactment of that measure for the establishment of a system of highways for the benefit of the people of the state. It is in this sense that our decision must be taken, and not at all with the idea that our purpose was to substitute our will for that of the Legislature. It is safe to say that a court of our limited jurisdiction would not attempt to indulge in such usurpation.

In our first opinion we referred to Ruling Case Law where it says that the extent of the power of expropriation is limited to the express terms or the clear implication of the statute conferring the authority. We state now, as we there stated, that there was no express power conferred by the statute, but that it had been given the commission by sufficiently clear implication to authorize the expropriation in the instant case.

If it were held that the commission had no power to expropriate on the straight line, now established, it is manifest and certain that it would make a curve in the highway so as to technically comply with the statute by touching the southern corporate limit of the village of Port Barre, and then return to the line westward along the railroad track towards Opelou-.sas. To believe otherwise would paralyze credulity. We make this statement because it will not be supposed for ·one instant that the commission would make almost a semicircle along the meandering bank of Bayou Courtableau, on through Port Barre village, and southwestward again to the resumption of the straight line, westward.

It is not and has not been disputed that the proposed highway, whether it goes as now laid out, or is curved· northward so as to touch the corporate limit of that town, that it will inevitably go through the land of the defendants, and as far as the record discloses, would not make any material difference to them whether the road be built on one line or the other. If the road is built on the line now projected, it is obvious that defendants will not suffer any injury in either their personal or property rights. Their position is this, you may pass through our land, providing you deviate your course by curving northward and touch the corporate limit of the village of Port Barre. Such a position is really fanciful. If the commission is, however, forced to deviate from the proposed straight line and touch the corporate boundary of that town, the result will be detrimental in entailing an increase in the expenditure of public funds and in the way of speed and safety to the traveling public.

For the foregoing reasons and those given in our former opinion, the rehearing is refused.