LANDRY, Judge.
Relator, State of Louisiana, Through the Department of Highways (Department) has invoked our supervisory jurisdiction to review the judgment of the lower court setting aside an order expropriating certain property belonging to defendants, Theodora Milliot Poole and Weldon W. Poole, pursuant to La. Const. Article 6, Section 19.1 and LSA-R.S. 48:441-460 (the latter known as the “Quick Taking Statute”), on the ground that the Board of Highways (Board) which ordered the expropriation was illegally constituted. We affirm the judgment of the trial court.
It is conceded that the Department, pursuant to the above mentioned constitutional and statutory authority, attempted to expropriate property of defendants adjoining State Route La. 21, Madisonville-Coving-ton Plighway in St. Tammany Parish, to widen and improve that roadway. The order of expropriation was issued by the trial court on June 27, 1968, simultaneously with the Department’s deposit of $6,464.00 in the registry of the Court as just compensation for the land sought to be taken.
The pivotal issue is whether one member of the Board, Otto Candies, whose vote was allegedly essential to constitute a %rds vote of the Board as required under the applicable law, was lawfully a member of the Board when the expropriation resolution was adopted.
The pertinent constitutional article and statute stipulates that the Board shall be composed of nine members, including the Governor of the State of Louisiana. The Board meeting which adopted the resolution of expropriation was attended by only six members inasmuch- as the Governor was absent therefrom and two members of the Board were deceased. Included in the six members present and voting was Mr. Otto Candies who had been appointed to the Board on July 8, 1960, to fill the unexpired term of Mr. Horace Dugas whose tenure was to have expired in June, 1965. It is admitted that Mr. Candies was not reappointed a board member subsequent to June, 1965.
The trial court held that the expropriation of defendants’ property was null and void because the resolution of expropriation did not receive a numerically favorable vote equal to two-thirds of the Board members as required by LSA-R.S. 48:442. In essence the lower court held that Mr. Candies’ term having expired, he was not legally a member of the Board when the resolution was adopted, consequently the five lawful members who voted did not constitute two-thirds of the membership of nine as required by law.
The Department contends the trial court erred in (1) dismissing its action for and setting aside the Court order of expropriation despite the owners’ failure to challenge the taking on the ground of an absence of public purpose, as is required by the statute when the Department is in substantial compliance therewith; (2) dismissing the suit and order of expropriation on the ground that the supporting resolution was invalid because one Board member was serving after expiration of the term for which he was appointed, even though no successor to the member had been appointed and qualified; (3) dismissing the suit and order of expropriation despite the owner’s acquiescence therein by vacating the expropriated property, surrendering possession to the Department, permitting construction of the project to proceed, and withdrawing from the registry of the Court the amount deposited by the Department as just compensation for the property taken; (4) permitting collateral attack upon the action of a public board on the ground one of its members was serving improperly and without authority contrary to established jurisprudence, and (5) holding that fárds of the total members (six) was required under the statute instead of %rds of those actually serving on the board at the time the resolution was adopted.
*542 We consider first the contention that the trial court erred in dismissing the expropriation proceeding even though the owner made no attempt to show that the taking was not for a public purpose. In so arguing, the Department relies upon LSA-R.S. 48:460, which provides in part as follows:
“The plaintiff shall not be divested by court order of any title acquired under these provisions except where such court finds that the property was not taken for a public use. In the event of such findings, the court shall enter such judgment as may be necessary to compensate the defendant for the period during which the property was in the possession of the plaintiff and to recover for the plaintiff any award paid. Added Acts 1954, No. 107, § 1, effective June 24, 1954.”
The Department’s contention, that its title acquired by virtue of its exercise of the authority contained in the applicable statute cannot be divested because of defendant’s failure to allege and prove that the property was not taken for a public purpose, is without merit under the circumstances. The question before us is not whether a valid taking, that is an expropriation in strict compliance with the applicable statute, may not be set aside because of the owner’s failure to allege and prove absence of a public use or purpose as provided in LSA-R.S. 48:460, but rather was the taking itself invalid because of the Department’s failure to literally comply with the statutory requirements? The question of whether the expropriation can be supported by a taking for a public use or purpose can become an issue only if the taking is executed in compliance with statutory authorization.
We note that in State, Through Department of Highways v. Bordages, La.App., 156 So.2d 617, writs denied 245 La. 462, 158 So.2d 612, our brothers of the Third Circuit held that a trial court has the authority to recall and set aside an order of expropriation under the statute in question where the Department has failed to comply therewith. We are in complete accord with the following observations in State v. Bordages, above:
“LSA-R.S. 48:460 provides that the plaintiff shall not be divested by court order of any title ‘acquired under these provisions’ except where the court finds that the property was not taken for a public use. We think this language indicates, and even in the absence of such a provision it would necessarily and logically follow, that if the Department of Highways obtains an order of expropriation without complying with the provisions of Act 107 of 1954 then its title under such an order could not be said to have been ‘acquired under these provisions,’ and the Department would not be entitled to the protection against divestiture of title as provided in LSA-R.S. 48:460.”
We agree that a taking under the statute in question is entitled to the protection against divestiture provided for therein only when the taking is valid because the provisions of the act have been scrupulously followed. We are also in agreement that even though the statute is silent on the subject, it necessarily follows that a taking which is void because of failure to adhere to the terms of the statute cannot clothe the expropriator with rights which can only flow from an exercise of authority in strict accordance with the statute’s provisions. Defendant-owners were not therefore estopped from assailing the validity of the Department’s title for noncompliance with the statutory provisions even though they did not allege the property was not taken for a public use or purpose. We hold therefore that a taking un--der the statute may be vacated where a failure to comply with the statute has been shown as well as those instances wherein it is timely urged that the taking is not for a public use or purpose.
The question of whether Mr. Candies was lawfully serving as a member of the *543 Board at the time the resolution in question was adopted must be determined in the light, among other things, of Louisiana Constitution Article 19, Section 6, and Article 6, Section 19.2.
Article 19, Section 6, provides:
“Section 6. All officers, State, municipal and parochial, except in case of impeachment or suspension, shall continue to discharge the duties of their offices until their successors shall have been inducted into office.”
Article 6, Section 19.2 states in pertinent part:
“(a) * * *
Within 30 days after a vacancy occurs on said board from any cause, the remaining members of the board shall nominate, from the panel herein provided for, seven (7) persons residents of the same Congressional District as that of the member whose office becomes vacant and shall certify such nomination to the Governor.
(b) From this list of seven names, the Governor shall normally appoint one to fill such vacancy within 30 days from the date he receives the nomination, but he may within his discretion appoint any one.
(c) In the event that for any reason, the Governor fails to receive the nominees provided for herein, within the time prescribed following the occurrence of a vacancy on the board, the Governor shall have the right and it shall be his duty to proceed forthwith to make an appointment to fill such vacancy.
. (d) No member shall be eligible for reapppointment who shall have served for as many as four years or more.”
The Department, relying upon the provisions of Article 19, Section 6, above, maintains that Candies, whose initial appointment is conceded to have been valid, remained in office as a de jure as well as de facto member of the Board even though his term had expired because no successor to him has ever been appointed and inducted into office. Contrarily, defendants contend that by virtue of the provisions of paragraphs (b), (c) and (d) of Article 6, Section 19.2(2), Candies, having served more than four years, was ineligible to succeed himself. Defendants further maintain that the general provision of Article 19, Section 6, must yield to the specific provisions of Article 6, Section 19.2(2) (d), which would be violated if Candies were permitted to remain in office beyond the time specified in Article 6, Section 19.2 for the naming of his successor. Stated otherwise, defendants maintain that under the express provisions of Article 6, Section 19.2, a member of the Board may retain the office following expiration of his term only so long as shall be necessary for appointment of his successor as therein provided. It is further contended that the authority vested in the Governor “to proceed forthwith to make an appointment to fill such vacancy” when a list of nominees is not submitted to him within the time provided in Article 6, Section 19.2, means within a reasonable time following such expiration and that three years, as in the case at bar, is not a reasonable time.
We find defendants’ position well taken. The provisions of Article 6, Section 19.2, are quite clear and explicit. It expressly states that upon receipt of the list from which a vacancy is to be filled, the Governor “shall normally appoint one to fill such vacancy within 30 days * This, we believe, also gives the Governor reasonable time following expiration of such thirty day period in which to make an appointment. We so hold because use of the term “shall normally appoint” does not limit his appointive power absolutely and mandatorily to a thirty day period following submission of the list to him. Where no such list is timely furnished, the Governor likewise has a reasonable time following the date on which a list should have been submitted in which to make the *544 appointment. What constitutes a reasonable time must of course be determined in the light of the circumstances of each particular case. The record before us is devoid of evidence explaining why this particular vacancy remained unfilled three years following expiration of Mr. Candies’ term of office. We agree with defendants that three years is an inordinate delay and that Mr. Candies’ continuance in office for such an extended time (almost three years) following expiration of his term violated the spirit and letter of Article 6, Section 19.2(2) (d) which prohibits his succeeding himself in office. We conclude therefore that Mr. Candies was not lawfully in office when the resolution of expropriation, relied upon herein by the Department, was adopted.
As previously noted, we find Article 19, Section 6, inapplicable because its scope is obviously general. Here we have an express special provision of equal constitutional dignity which stipulated that a Board member may not succeed himself. To interpret Article 19, Section 6, as continuing a Board member in office indefinitely is to utterly nullify the clear provisions of Article 6, Section 19.2. This we cannot do. We believe the construction herein reached gives recognition to both provisions.
The Department relies upon State v. Moreau, 1S3 La. 671, 96 So. 527; State v. Cullens, 168 La. 976, 123 So. 645; State v. Broussard, 202 La. 458, 12 So.2d 218, and State v. Kennedy, 232 La. 755, 95 So. 2d 301, in contending that the actions of state officials or members of state boards and commissions cannot be collaterally attacked on the ground that such officials or members are serving improperly because such officials are de facto officers whose actions are binding upon third persons and the public unless their actions in such capacity are otherwise wrong or illegal. This established principle is urged as being necessary to insure continuity of governmental functions.
Our examination of the cited authorities reveals that in each instance the official involved was charged with having forfeited an office the term of which had not expired. In State v. Moreau, above, two jury commissioners allegedly relinquished their offices by accepting positions on the board of supervisors of their respective road districts. In State v. Kennedy, above, a jury commissioner was held to be an official de facto if not de jure notwithstanding he had changed his residence to a parish other than that in which he was appointed to the office. State v. Kennedy, above, citing State v. Moreau, expressly declared that this line of jurisprudence is authority solely for the rule that if a public officer commits some act which operates a forfeiture of his office, nevertheless his subsequent official actions shall not be deemed invalid insofar as third persons and the public are concerned. In State v. Cullens, above, a trial judge who continued in office despite attaining the mandatory retirement age was deemed a judge de fac-to whose acts as such are valid. State v. Broussard involved a jury commissioner who was charged with being illegally in office because of his having been charged with a criminal offense. In each of the cited authorities it was expressly found that the official involved continued to hold office under color of right.
We distinguish the present case from Moreau, Cullens, Kennedy and Broussard, above, and find them inapplicable to the instant matter on the ground that the conduct herein attacked was not an act performed during the term for which the officeholder was appointed and qualified. The official conduct involved in the case at hand was performed long after expiration of the term to which the official was appointed. Under the circumstances, Mr. Candies was not an officeholder under col- or of right. We conclude that he was not an official either de facto or de jure but was a usurper in office whose purported official acts are subject to direct attack by any party thereby affected. Any other conclusion, we believe, would condone a *545 patent violation of the clear and unequivocal prohibition against a Board member succeeding himself.
The Department urges that LSA-R.S. 48:460 requires only a 2/3rds vote of the Board members actually in office. On this basis, it is contended that since there were seven members on the Board, including the Governor and Mr. Candies, a vote of only 4 and %rds members were needed to constitute the required ^rds vote and since five members, excluding Mr. Candies, voted for the resolution of expropriation, it must be deemed adopted by the requisite %rds vote. The trial court rejected this contention on the ground that the Constitution provides for a nine member board and that since LSA-R.S. 48:442(1) requires concurrence of “not less than two-thirds of its members”, a vote of six, or two-thirds of the total membership of nine, was required. The lower court’s decision was signed February 6, 1970, prior to the decision of this court in Branton v. Parker, rendered March 9, 1970, reported April 30, 1970 at 233 So.2d 278. In Branton, above, this court held that La.Const. Article III, Section 34, providing that salaries of public officials may be changed “by a vote of two-thirds of the members of each house of the Legislature” in effect means a vote of two-thirds of a quorum present, provided the vote equals or exceeds a majority of the total elected membership of each chamber.
If the rule announced in Branton, above, and the authorities cited therein, were applicable in this instance, the Department’s contention would be correct. La.Const. Article 6, Section 19.2(6) provides that “a majority of the members constitutes a quorum of the board. In case of a tie vote, the Governor shall cast the deciding vote.” Inasmuch as five members constitute a quorum as well as a majority of the Board’s total membership, Branton would dictate that a vote of five members in this instance complies with the two-thirds requirement in the pertinent statute.
We find, however, that the rule announced in Branton, above, is inapplicable to the case at hand. The present case is distinguishable from Branton, above, in that we are here dealing with an expropriation of private property for public use. In this area a rule of strict construction obtains. Orleans-Kenner Electric Ry. Co. v. Metairie Ridge Nursery Co., 136 La. 968, 68 So. 93; Louisiana Highway Commission v. Cormier, 13 La.App. 459, 128 So. 56. In matters of this nature, any doubt or ambiguity concerning the authority of the expropriating agency must be resolved against the expropriator and in favor of the landowner. Orleans-Kenner Electric Ry. Co. v. Metairie Ridge Nursery Co., above. We find this rule of interpretation particularly and peculiarly applicable to the statute in question which, among other things, authorizes taking, by ex parte order, prior to determination and payment of compensation due. Such a result was constitutionally proscribed prior to adoption of La.Const. Article 6, Section 19.1, and the decision in State Through Department of Highways, v. Macaluso, 235 La. 1019, 106 So.2d 455. We find that the applicable statutory requirement “with the concurrence of not less than two-thirds of its members” is not entirely clear. Does it mean “with the concurrence of not less than two-thirds of its total membership provided for by law” as contended by defendant-appellee ? Does it mean “with the concurrence of not less than two-thirds of those members present and voting at a meeting?” Does it mean “with the concurrence of not less than two-thirds of a quorum of its members?” Or, as contended by the Department, does it mean “with the concurrence of not less than two-thirds of its members actually in office?” To adopt the Department’s position, it is necessary to judicially revise and amend the pertinent provision to read: “with the concurrence of not less than two-thirds of its members ACTUALLY IN OFFICE.” (Emphasis by the Court.) We believe a strict construction dictates that the requirement “with the concurrence of *546 two-thirds of its members” be held to mean two-thirds of the total membership provided for by law. Any other construction would resolve the ambiguity in favor of the expropriating authority, adversely to the interest of the landowner. Such a result is contrary to established jurisprudence. See Orleans-Kenner Electric Ry. Co., above. We hold therefore that a vote of two-thirds of the total authorized members, or six, is required by LSA-R.S. 48:442. It follows that elimination of Mr. Candies’ vote leaves the resolution in question with only five concurring votes, one short of the required six.
Our independent research discloses the case of Liquefied Petroleum Gas Corporation v. E. R. Kiper Gas Corporation, 229 La. 640, 86 So.2d 518, which authority was not cited by either party herein. In the cited authority it was contended that where a constitutional commission of five members was provided for, the Commission was illegally constituted and could not function because only three members had been appointed. The Supreme Court rejected this contention. The court held that although five members were provided for, the constitutional provision setting up the Commission, Article 6, Section 28, also expressly provided that “a majority of the membership shall constitute a quorum for the transaction of all business.” (Emphasis by the Court.) In Kiper Gas Corporation, above, the court posed the question as follows : “Hence, the question is not whether a body corporate was created but whether the entity so created could function through appointment of a less number than its entire membership.”
In Kiper Gas Corporation, above, the court, relying upon People ex rel. Hoffman v. Hecht, 105 Cal. 621, 38 P. 941, 27 L.R.A. 203, established the rule that where a majority of an administrative board or commission possesses all the authority of the whole body, a majority is competent to exercise such authority as the body possesses because, for all practical purposes, the majority becomes the full body.
We find Kiper Gas Corporation, above, readily distinguishable from and therefore inapposite to the case at hand. The question of whether the Board in this case can function at all with only a quorum of its members present must be resolved in favor of the Board. We so hold on authority of Const. Art. 6, Section 19.2(6), which provides that a majority of the Board’s members shall constitute a quorum, and also upon authority of Kiper Gas Corporation, above.
However, the question before us is not whether the Board can function at all with a majority present and constituting a quorum. We are here concerned with the meaning of an express statutory provision requiring “the concurrence of not less than two-thirds of its members”, to take particular action, namely, expropriate private property for public use.
The argument that the owners are estopped from asserting the invalidity of these proceedings is based upon LSA-R.S. 48:219, which provides that once the Department lays out a highway project and commences construction thereon without objection on the part of the landowner, the latter may not hinder construction by any legal process whatsoever but is limited to an action for damages. In this respect the Department also invokes the St. Julien Doctrine which is a jurisprudential rule to the same effect as LSA-R.S. 48:219.
The landowners herein timely answered the Department’s action and questioned the validity of the resolution of expropriation on the ground that it did not bear the concurrence of two-thirds of the Board as required by law. The Department argues that such objection or opposition is insufficient to overcome the effect of LSA-R.S. 48:219 and the St. Julien Doctrine. Additionally, the Department argues that the owners’ acceptance and withdrawal from the registry of the trial court of the sum deposited as compensation for the taking is further acquiescence in the taking.
*547 Under the St. Julien Doctrine, a landowner is held to have waived his right to attack the validity of an expropriation decree when, with full knowledge of an unlawful taking, he expressly consents to or silently acquiesces in the taking. Veillon v. Columbia Gulf Transmission Company, La.App., 192 So.2d 646, and cases cited therein. LSA-R.S. 48:219 establishes a similar rule. Unquestionably the foregoing jurisprudence and statutory authority prohibit an owner from reclaiming his property or recovering damages for trespass when the taking is illegal if he does not object to or resist the taking and permits construction of a public project to commence. In such instances the owner is relegated solely to a claim for compensation for the value of the property taken and severance damages to the remainder, both determined as pf the date of taking. The rule applies irrespective of whether a mistake of fact or law is involved. Veillon v. Columbia Gulf Transmission Company, above, deemed the doctrine applicable under the following circumstances:
“The record reflects without contradiction that the landowner Veillon did not oppose the appropriation of his property. He did refuse the condemnor’s initial offer of compensation. But when the company went ahead with its construction, by his own commendably frank testimony he did not object to the laying of the line until he filed this suit some weeks later, Tr. 92, even though he was on the construction scene daily.”
It appears that in Veillon, above, the owner did not contest the taking or object in any manner whatsoever until after construction had begun. In the case at bar, defendants challenged the Department’s action and assailed the expropriation order from the outset on the ground that it was not concurred in by the requisite number of Board members. The Department suggests that a landowner must be held to have acquiesced in the taking unless he pursues his resistance and objection to the utmost, including efforts to enjoin further action by the expropriating authority. It is pointed out that here all the landowner has done is challenged the validity of the taking but nevertheless has surrendered possession, of the property and permitted construction to commence. We reject this contention as placing an unconscionable burden on the landowner. We believe that all the expropriating authority is entitled to in instances of this nature is reasonable notice of the landowner’s objection. We further believe the requirement of reasonable notice is fulfilled where, as here, the landowner timely answers the suit and therein challenges the validity of the taking. Such objection, we believe, suffices to remove the case from the effect of the St. Julien Doctrine and LSA-R.S. 48:219.
We find no merit in the Department’s contention that since the landowners have withdrawn the compensation deposited in Court, the invalidity of the taking may not be urged even though the taking may have been irregular. It is argued that the withdrawal is acquiescence in the order of taking. The record in this case contains a stipulation in which the Department expressly agrees that the deposit may be withdrawn without prejudice to any of the landowner’s rights. Pursuant to said stipulation, the deposit was withdrawn with the consent and approval of the trial judge. In view of this stipulation, it ill behooves the Department to now urge that defendant’s rights are prejudiced by said acceptance.
In an alternative vein, the Department contends that even if it be concluded the Board were illegally constituted, the expropriation order should be maintained because the Board substantially complied with the requirements of the Quick Taking Statute. It is contended that this is a just and equitable result since the landowners have not themselves complied with the statutory mandate of showing an absence of public purpose in the taking. According to relator, it is inequitable to disregard the *548 public purpose rule required by Section 460, to prevent a taking, and at the same time insist upon compliance with Section 442 which calls for a two-thirds vote of Board members. The answer to this position lies in the fact that Section 460 is inapplicable to the case at hand because here the validity of the taking is expressly challenged on a specific legal ground. Section 460, which requires proof of absence of public purpose on the part of an owner to prevent a taking, is applicable only when the taking is otherwise proper. An expropriation proceeding which is void in its inception cannot create rights or privileges under a statute which contemplates expropriation in accordance with a procedure established by law. In addition, we believe that the rule of strict construction applicable herein demands literal compliance by the expropriating authority with all the rules to which the exercise of its authority is subject by law.
It is ordered, adjudged and decreed that the judgment of the trial court dismissing plaintiff’s action be affirmed, subject to the amendment that plaintiff’s action be dismissed by the trial court upon a proper showing that defendants Theodora Milliot Poole and Weldon W. Poole have made restitution to relator, State of Louisiana, Through the Department of Highways, of the sum of $6,464.00 deposited by relator in the registry of the trial court. All costs of these proceedings assessable against relator by law shall be paid by relator.
It is also ordered, adjudged and decreed that this matter be remanded to the trial court for further proceedings consistent with the views herein expressed.
Amended and remanded.