No. 3464

Second Circuit

K. C. S. & G. RY. CO. v. MEYER ET AL.

(March 12, 1929. Opinion and Decree.)
(April 5, 1929. Rehearing Refused.)

Wilkinson, Lewis and Wilkinson, of

Shreveport, attorneys for plaintiff, appellant.

Thatcher, Browne, Porteous and Myers, of Shreveport, attorneys for defendants, appellees.

ODOM, J. The District Judge in a written opinion has stated the issues involved in this case, as well as his conclusions. We quote his opinion in full:

"This is an expropriation case in which plaintiff seeks to take a part of the property belonging to defendants as shown by the blue print in the record for the purpose of a spur or switch track leading from its line in to the property of the Shreveport Creosoting Company, and bases its right, according to the pleadings, upon the following allegations, to-wit:

" 'Petitioner shows that said spur track will, after crossing defendants' property, enter upon the property of the Shreveport Creosoting Company; that it will serve said Shreveport Creosoting Company, the Long-Bell Lumber Company and such other shippers as may desire to make use of said spur tracks without discrimination and with equal rights to all who desire to avail themselves of the use of said spur track and will ultimately connect with the Texas & Pacific Railway Company, thus enabling it at this point to interchange cars and traffic with said Texas & Pacific Railway Company.'

"The case has once been to the Supreme Court (166 La. 663, 117 So. 765) on the question as to whether or not the exception filed by the defendants should be passed on by the court, or by the jury, and the exception which raises the question of public necessity for the taking of the property has now been tried and it is this question which is up for decision.

"The exception was tried on affidavits, and numerous objections to portions of the affidavits were made, most of which were to be decided when the case itself was decided. We see no necessity at this time for going into these objections in detail in view of the conclusion which we have reached on the merits, and which conclusion would not be affected either way by the objections.

"An exception of no cause of action was filed and presented to the court prior to the trial mentioned, and the exception was over-ruled. At that time we were rather of the opinion that the plaintiff had not alleged such a condition as would justify the exercise of the right of eminent domain; that the only piece of track which would belong to the plaintiff would be situated on the property sought to be expropriated, and it was not plain whether anyone other than the defendants could make any use of said track for the purpose of tieing on another switch track at that point. That the pleadings did not make it plain whether anyone beyond the property of the Shreveport Creosoting Company would have the right to use such switch track after same entered the private property of the Shreveport Creosoting Company; and it was for the foregoing reasons that we determined to have the exception trial rather than to settle the matter on an exception of no cause of action. We reached this conclusion very largely upon the opinion of the Supreme Court in the case of Kansas City, S. & G. Ry. Co. vs. Louisiana W. R. Co., 116 La. 178, 40 So. 627, 5 L. R. A. (N. S.) 512, 7 Ann. Cas. 831, in which case the Court quoted with approval the following language from a court of a sister state, to-wit:

" 'The character of a way, whether it is public or private, is determined by the extent of the right to use it, and not by the extent to which that right is exercised. If all the public have a right to use it, it is a public way, although the number who have occasion to exercise that right is very small. * * * All termini of tracks and switches are more or less beneficial to private parties, but the public character of the use of the tracks is never affected by this.'

"Using the above as a guide, we think there is no necessity for going into any other question in this case than the character of the proposed spur track after it enters the private property of the Shreveport Creosoting Company.

"On the trial of the case, evidence was sought to be introduced showing a present necessity for said property for the purpose of making the proposed track an interchange track with the Texas & Pacific Railway Company, but this evidence was ruled out as the pleadings did not allege a present necessity for same along that score, but merely alleged that at some time in the future same might be made an interchange track.

"We have been furnished with no authority which would give to any property holder beyond the property of the Shreveport Creosoting Company a right to tie on and use the proposed spur track after it enters the private property of the Shreveport Creosoting Company.

"The affidavit of Mr. Reese, Chief Engineer of the plaintiff Company, offers the only testimony which was adduced on the trial touching the rights of others to use the said proposed track, and in this affidavit all that he testifies to is that the plaintiff Company has no contract with the Shreveport Creosoting Company, but that such is in process of execution, and that in said contract will be inserted a provision authorizing the use of the track on the Shreveport Creosoting Company's property for the use of or to reach any enterprise or customer that may be necessary who is located on the property adjacent to that of the Shreveport Creosoting Company. Mr. Reese does not pretend to testify that such a contract as that has ever been consummated at the time his affidavit was drawn up, and we have no way of knowing whether such will ever be consummated. Without such a contract we cannot see that anyone would have the right to use this spur track on the private property of the creosoting company, and the conditions set forth in the case quoted from 116 La., do not exist at the present time in the case at bar, and as matters now stand, the purpose of the present expropriation suit is to serve the private purpose of the Shreveport Creosoting Company and the Long-Bell Lumber Company, the latter being in a way an adjunct and co-operating with the Shreveport Creosoting Company. Such being true, we do not think that the plaintiff has any right to expropriate the property of defendants and that the exception of want of public necessity should be sustained, and it is so ordered and plaintiff's suit dismissed."

To the above we add that the testimony submitted fails to convince us that any

necessity whatsoever, either public or private, exists for the expropriation of defendants' property. The lower court was convinced, and so are we, that the present purpose of expropriating the property is to serve the Shreveport Creosoting Company and Long-Bell Lumber Company which, so far as their interests in the spur track are concerned, are practically one and the same.

The proposed spur track will enter the private property of the creosoting company and for the present, at least, will serve only that company. But the spur track can be built so as to serve that concern without crossing defendants' land.

The case on its merits was submitted on affidavits. We find among them that of Col. Frank E. Estes, who is a member of the American Society of Civil Engineers, and an engineer of over thirty years' experience, during which time, he stated, he had had occasion to lay out, construct and operate numerous sidings, switches and yards for railroads and other industrial purposes; that he had made an investigation of existing facilities for serving the plant of the Shreveport Creosoting Company and the Long-Bell Lumber Company by the Kansas City, Shreveport & Gulf Railway Company, and had investigated the feasibility of constructing other and additional spur tracks for the service of said plant. We quote the following from his affidavit:

"Affiant further stated that a spur track or switch track could be constructed running off the existing siding parallel to the main line of the plaintiff company and into the said property so as to miss the defendants' corner by 7 feet, using the same curve as shown by plaintiff's plat attached to its petition, and such a line if continued into such property for a like distance as the line shown upon plaintiff's plat, would be only 35 feet distant from the track as shown by said plaintiff's plat. The spur track here referred to is designated upon the attached plat by the lines marked in blue. Affiant further stated that there are no existing buildings or construction at present upon the property to be served which would interfere with the construction of such a track. Further that the construction of such a track so as to miss defendants' corner by 7 feet could be constructed as cheaply and will serve the property as well insofar as the railroad is concerned, as the proposed track contended for by plaintiff."

After reading the affidavit of Col. Estes, Mr. A. N. Reese, chief engineer of the plaintiff company, submitted an additional affidavit in which he said that such a spur as described by Col. Estes might be constructed, as stated by him, but that same would not be good railroading for the reason that it would pass within seven feet of the corner of defendants' property. Whereas, in order to have sufficient clearance space, there should be at least nine feet between said railroad or spur track and the adjacent property. Further explaining, he said that it is customary to assume that property adjacent to such spur track will in the course of time be utilized by building thereon, and that assuming that defendants might utilize their property by building a house or structure on the corner thereof that such building would be so close to the switch track as to render same dangerous to the employees, such as switchmen, etc., who make it a habit to ride on the sides of cars, and that said employees would be in danger of being knocked or brushed off by the structure if within seven feet of the railroad track. There is, therefore, practically no difference between the testimony of Mr. Reese and that of Col. Estes, the latter apparently being of the opinion that seven feet was sufficient clearance, whereas the former was of the opinion that there

should be at least nine feet clearance. We have before us the map made by Mr. Reese and that made by Col. Estes, and we can imagine no reason why the spur track could not be moved over two additional feet in order to conform to Mr. Reese's opinion as to where it should be constructed. If that could be done, it would seem that the construction would conform to Mr. Reese's ideas. Mr. Reese states in his affidavit that "a spur track constructed as outlined by the affidavit of Mr. Estes would not and could not *efficiently* reach the property of the Shreveport Creosoting Company." He further states, "of course, a spur track can be constructed at several points along its right of way, which would reach the property of the Shreveport Creosoting Company, but would not reach it in such way as to serve it *efficiently* and in accordance with the way that the Shreveport Creosoting Company has its plant laid out, and in course of construction, said proposed spur or switch track as outlined by Mr. Estes, would not be satisfactory and would not serve the Shreveport Creosoting Company in an efficient manner." From Mr. Reese's affidavit as a whole, we are impressed that he concedes that, while the plan suggested by Col. Estes is altogether feasible, except that he thinks that it should be constructed two feet farther away from the corner of defendants' property, which, of course, could be done, yet he thinks that to construct it in accordance with his plan, which would necessitate the expropriation of defendants' property, would be more convenient and more satisfactory to the Shreveport Creosoting Company. He says that the Shreveport Creosoting Company would have to rearrange the outlay of its property to some extent. We have no doubt that it would be more convenient for the creosoting company to have the spur track constructed over defendants' property, as contemplated by plaintiff. But, defendants are not called upon to yield possession of their private property to suit the mere convenience of others. The testimony shows that plaintiff can construct a spur track leading from its right of way into the creosoting company's property so as to serve it without crossing defendants' land, and at no additional expense. While such track might be not altogether as convenient for the creosoting company as the one contemplated, it will nevertheless meet the ends sought to be obtained.

Public service corporations are by statute permitted to expropriate private property for spur tracks under the law of eminent domain. But that power can be exercised only in cases where a necessity for the taking thereof exists.

We hold, as did the District Court, that it is not shown that any necessity exists for the proposed taking of defendants' property.

Under this view, it becomes unnecessary to pass upon the question presented · by counsel as to whether a railroad company may expropriate private property for a spur track to serve only one enterprise. In this connection, however, the following from "Dillon on Municipal Corporations," quoted by the Court in Hoggart vs. V. S. & P. Railroad Co., 34 La. Ann. 624, is pertinent:

"Since the power to condemn private property against the will of the owner is a stringent and extraordinary one, based upon public necessity as an urgent public policy, the rule requiring the power to be strictly construed, and the prescribed mode for its exercise strictly followed, is a just one, and should, within all reasonable limits, be inflexibly adhered to and applied."

And also the following from Kansas

City, Shreveport & Gulf Railway Company vs. Meyer, 166 La. 663, 117 So. 765:

"On the contrary, the statutes provide that expropriation for switch or spur tracks is to be governed by the general expropriation laws of the state. Those laws are to be found in the Civil Code, under the heading 'Of the Compulsory Transfer of Property,' the very first article (2626) of which impliedly, if not expressly, limits the obligation of yielding by the owner of his property to the community for public use, to cases where the property is needed for such general and public use, and, where such owner refuses, he may, by the authority of the law, be divested of his property to the extent needed for the public use."

The judgment appealed from is correct; and it is accordingly affirmed, with costs in both Courts.