SCHUMM and others, Respondents, vs. MILWAUKEE COUNTY and others, Appellants.

*December 6, 1950—January 9, 1951.*

For the appellants Milwaukee county and Oliver L. O'Boyle, corporation counsel, there were briefs by *William J. McCauley*, district attorney, and *Mr. O'Boyle*, and oral argument by *Mr. O'Boyle*.

For the appellant Milwaukee County War Memorial Center, Inc., there were briefs by *Miller, Mack & Fairchild*, attorneys, and *Ralph M. Hoyt* of counsel, all of Milwaukee, and oral argument by *Mr. Hoyt* and by *Mr. Ronold Dreschler* of Milwaukee.

For the respondents there were briefs by *Quarles, Spence & Quarles*, attorneys, and *John Redford, Nathan Pereles, Lester Gunsburg, Thomas H. Spence, Arthur Wickham*, and *Edmund W. Powell* of counsel, all of Milwaukee, and oral argument by *Mr. Wickham, Mr. Powell*, and *Mr. Thomas Spence*.

There was also a brief by *Martin R. Paulsen* of Milwaukee, as *amicus curiae*.

BROWN, J.   The corporation is a nonprofit, nonstock company organized for the purposes specified in sec. 45.05, Stats., that is, to construct, maintain, and conduct a war-memorial project. It has approximately two and one-fourth million dollars, given to it for such purposes by patriotic citizens and corporations. It entered into negotiations with the county board of supervisors and a plan was evolved for the county to acquire suitable land, by condemnation or otherwise, on which the corporation would place memorial buildings costing $5,000,000. A site on the east side of the city of Milwaukee was agreed upon and the county and the corporation

executed a document which they call a contract, authorized by sec. 45.055.

This instrument requires the county to test in court its right to condemn a site for the memorial and conditionally requires the corporation to construct it. By the agreement, title to the structures as built will be in the county. They are to be in separate units described generally as (1) a veterans' building, (2) an art gallery, (3) audience halls. A "memorial board" to operate the memorial, composed as directed by sec. 45.058, Stats., will, when formed, submit to the county a plan of management. Necessary operating appropriations will be handled as though the memorial was a county department. The corporation's money is said to be adequate to erect the veterans' building, though no plans or specifications have been prepared, and the corporation agrees to solicit donations to finance the other units. If the required sum has not been raised in ten years the county may abandon the project and dispose of unneeded land.

The complete project, as described in the "contract," requires the acquisition of the real estate of private owners, appraised at $563,000, in two and a fraction city blocks and the union of this land with adjoining county property. It contemplates the vacation of certain city streets and the county is to petition the city council for such vacation. If vacation is not obtained and the corporation is unable to present a plan substantially the same as vacation and satisfactory to the county, the county may terminate the agreement. Construction will go ahead as necessary land is acquired by the county and made available to the corporation, as building plans satisfactory to the county are submitted by the corporation, and as money is available to defray the estimated cost of those units whose plans may have been approved by the county.

Having executed the instrument, the county board of supervisors instructed its corporation counsel to proceed to test the legality of the proposition set forth in the "contract."

He sent each property owner in the area a written notice that he was commencing proceedings to condemn such owner's property for the purpose of erecting the war memorial according to contract between the county and the corporation. The owners retained counsel and sought and obtained the injunction referred to.

The learned trial court found as facts that:

"17. There are at least three contingencies upon the occurrence of any one of which some or all of the land sought to be acquired by the county may never be used for the proposed war memorial, to wit:

"a. If the full five million dollars cannot be raised;

"b. If the consent of abutting owners cannot be obtained to the vacation of streets;

"c. If plans are not approved by the county board."

And as conclusions of law he found that:

"First. The war memorial as presently proposed does not constitute a proper public use.

"Second. The contract between the defendant county and the defendant center is void because lacking in mutuality and because of failure to comply with section 45.055 of the statutes.

"Third. For reasons stated in the foregoing findings, eminent domain cannot be used or resorted to to acquire the lands and premises referred to in finding 4."

These findings and conclusions present the questions to be reviewed and determined on the appeal of the county and the corporation.

It does not escape notice that when the county board of supervisors instructed its counsel to test its right to condemn for this purpose it did not, in fact, instruct the corporation counsel to commence condemnation proceedings, nor did it resolve to create a war memorial nor resolve that the property in question was necessary for that declared purpose. Such resolutions may never be adopted but without them no condemnation process could be effectively instituted by the cor-

poration counsel. *Freber v. Beaver Dam* (1931), 205 Wis. 299, 302, 303, 237 N. W. 119. Therefore his notice to the owners that he was proceeding against their property was, when given, without substance. If, when these omissions appeared, the learned trial court had dismissed the complaint on the ground that the threat was presently so obviously impossible of fulfilment that the plaintiffs were not in jeopardy of being illegally dispossessed of their property and no protection by the court was required, we could have sustained its judgment with much less labor than is now necessary. However, the trial court evidently believed the temper of the county board was such that the adoption of such resolutions would certainly take place and it moved directly to a consideration of the questions as though the county board had so acted. We will review the court's action as it was taken and not as it might have been.

The right to condemn is an attribute of sovereignty and is often indispensable for the common good but it is, nevertheless, so harsh a right that even the sovereign may not exercise it unless the public purpose is clear and the public use, for which the private owner is to be compelled to surrender his property, is assured. Where such assurance fails the courts have consistently stood between the owner and the demand. *Wisconsin Water Co. v. Winans* (1893), 85 Wis. 26, 54 N. W. 1003; *New Lisbon v. Harebo* (1937), 224 Wis. 66, 271 N. W. 659.

The county submits that its right to condemn the plaintiffs' property for the described facilities does not depend on contract and the validity of that instrument is immaterial. If the veterans' building, art gallery, and audience halls were to be erected by the county as a war memorial and devoted to public use there appears to be no doubt of the county's right to obtain necessary sites for them by condemnation. But that is not what the county proposes to do.

We think it clear that a municipality cannot take private property by eminent domain except for public use and when

it has both the power and the intent to accomplish that purpose. No doubt, Milwaukee county has the power, by taxation, to raise the money with which to erect the memorial buildings but it has no intent either to raise the money or to spend it in that way. As far as the county is to act, the property will remain in its present condition in which no public use of it is contemplated or is feasible. A program which stops there obviously will not justify condemnation but that is where this one stops except as the development of the site by others is assured; and there can be no such assurance without a valid, enforceable contract for such development between the county and some other body whose financial resources and responsibility are adequate to adapt the premises to public use. Hence such a contract is not immaterial to the county's right to condemn, as it has said, but under the present circumstances is indispensable.

We turn, then, to an examination of the contract and we find in it provisions for abandonment if certain difficulties arise. Appellants say, truly, that such escape clauses are common in commercial contracts and do not invalidate them, citing leases which one party may terminate upon the happening of some event, or at will. And, of course, commercial contracts may always be terminated by mutual consent. There is, however, no escape clause here for the property owner nor does mutual consent extend to him. It is proposed to take his home or place of business without his consent and he is at the very least entitled to have it shown that the taking is for a public use definite and certain of attainment. Because the fulfilment of the public use was uncertain, we restrained condemnation in the *New Lisbon v. Harebo Case, supra,* where the use depended on building a dam, a permit for which possibly might not be obtained. In *Wisconsin Water Co. v. Winans, supra,* we prevented it because it was not shown that the petitioner had secured the right to lay his pipes or distribute his Waukesha water in the city of Milwau-

kee and such rights, upon which the alleged public use depended, might not be granted. If, beside the uncertainty raised in the present contract by the contingencies for which escape clauses are provided, is added the uncertainty of a customary business contract which the contracting parties may end whenever they agree to do so, the situation of one whose property is threatened with condemnation is precarious indeed. We do not consider that likening this contract to commercial ones has strengthened appellants' position. At any rate, the present "contract," which purports to define the public purpose and the public use for which the plaintiffs' properties are required, not only contains uncertainties that these uses and purposes will be fulfilled which are quite as serious as the uncertainties which hitherto have led us to protect against condemnation, but it actually points some of them out and provides for the abandonment of the project for which the properties have been seized.

By granting statutory permission to municipal corporations to contract with nonprofit corporations for the erection and maintenance of memorials the legislature did not, and we are certain that it did not try to, give to municipalities condemnation rights which the municipalities, acting alone, did not have. The matters which the present contract leaves open for the future agreement, or disagreement, of the contracting parties are so many and so important to certainty that the public purpose will be fulfilled that from the standpoint of either the plaintiffs or the public it is less a contract than it is a prospectus, a declaration of the intent of the county and the corporation jointly to provide a memorial whose general character is known in general terms though the specific expression of that character has not yet been agreed upon.

The trial court found that the sum necessary to complete the entire project might not be raised while the county proposed to condemn land in excess of that which it now has funds to improve. Now the county says that it does not

really intend to condemn more land than there is money to develop; that is, it will condemn only the site of the veterans' building, and it asserts that such limited condemnation is all that the contract authorizes or directs. As we read the contract there is nothing in it which confines condemnation to an area on which buildings can be financed from present funds; nor did the county so construe it when it notified every owner in the entire tract that it was proceeding against his property. The defendants must stand on the record they have made and the property owners and the courts are entitled to rely on what the county told the owners it was about to do. But even if no more land was to be appropriated by the county than the corporation had money to improve, the other difficulties appear. Assuming that the county had acquired the site of the veterans' building, it is clear that the defendants have not agreed to construct it. With the utmost good faith and good will on the part of the trustees and members of the corporation and the members of the county board they may never reach agreement on plans and specifications for which the corporation is willing to spend its money and which the county is willing to accept. The county cannot compel the corporation to spend its two and one-quarter million dollars on a structure which is wanted by the county but is not satisfactory to the corporation. It cannot impose its plans on the corporation but can only pass upon such plans as the corporation submits to it. If streets cannot be vacated, if money cannot be raised, if plans and specifications to be prepared in the future are not agreed upon, the county's only recourse is to abandon this undertaking. Meantime, if condemnation is permitted, private persons will have been ousted from their homes and business premises. It will not do. While such uncertainties lie between the proposed and the completed project we must say, as we said in the *New Lisbon Case, supra* (p. 74), ". . . it is impossible for us to see how

at the time of the condemnation proceedings the taking can be said to be for public purposes."

In addition to the uncertainty of the development of the site for public purposes, there is another difficulty to overcome. It is axiomatic that private property cannot be taken by government without the consent of the owner save for public use. Primarily, the right to declare what is a public use is vested in the legislature. 18 Am. Jur., Eminent Domain, p. 675, sec. 46. No doubt all the structures described in the "contract" are susceptible of public use and sites for them may be condemned if they are surely to be built and if the public is to have the use of them. The "contract" provides that a "memorial board" shall be formed, composed as directed by sec. 45.058, Stats., and when formed, shall submit to the county a plan of management. This section authorizes the erection and maintenance of the memorial under sec. 45.05 and sec. 45.055 by agreement between the county and the corporation. Sec. 45.055 declares that if the county makes an appropriation for the construction or operation of the memorial its facilities shall be available to the residents of the county to such extent as the county board may require. What happens if there is no appropriation is not stated in the law. Presumably, then, management lies in the corporation or the memorial board and the county board has no jurisdiction. It may be that this provision was designed to permit county aid to memorial buildings owned by private corporations and with the county aid goes a measure of county control. We need not commit ourselves to an interpretation of the statute now but, as these statutes are relied on by the defendants, it is apparent that either the memorial board alone or the memorial and county boards together are to determine what the use of the project may be. Their ideas, when expressed may fall far short of that public use which will justify the taking of private property by eminent domain. The "contract" sets up no guide. Con-

demnation statutes being in derogation of the common law are to be strictly construed. *New Lisbon v. Harebo* and *Freber v. Beaver Dam, supra.* The projected public use must clearly appear before a proposal to condemn can be approved by the courts. ". . . the public use [for which private property may be taken by eminent domain] consists in the possession, occupation, and enjoyment of the land itself by the public, or public agencies, and not in any incidental benefits or advantages which may accrue to the public from enterprises of this nature." *Whiting v. Sheboygan & Fond du Lac R. Co.* (1870), 25 Wis. 167, 195.

If secs. 45.05 and 45.055, Stats., which control the use of the memorial, were expressly incorporated in the contract it would appear that the county proposes to condemn private property as a site for buildings which the public may use to an extent determined by the corporation or the memorial board or agreed upon between the county and the memorial boards. That is actually what the memorial-management features of the "contract" entail. Public use under this "contract" is thus made conditional but private property may not be condemned unless the public use in it is to be unequivocal and absolute except for necessary and reasonable regulation in the use and enjoyment thereof.

Other propositions are urged upon us but we believe we have expressed ourselves on as many as are required to reach a decision and to extend the opinion to those not treated would be to engage in the forbidden practice of rendering advisory opinions. We conclude the judgment of the learned trial court must be affirmed.

*By the Court.*—Judgment affirmed.