CHARLES CAREY, Claimant-Appellee, v. BRYAN & ROLLINS, Employer-Appellant.

(*May* 6, 1954.)

HERRMANN, J., sitting.

*Robert W. Tunnell* and *Arthur D. Betts* (of Tunnell and Tunnell) for the Claimant-Appellee.

*Houston Wilson* for the Employer-Appellant.

Superior Court for Sussex County, No. 115, Civil Action, 1953.

HERRMANN, J.:

The claimant seeks workmen's compensation for injuries sustained when a motor vehicle, which he was driving, ran off the road and struck a telephone pole.

During the hearing before the Industrial Accident Board, the claimant testified upon direct examination regarding details of the accident in which he sustained the injuries for which he now claims compensation. The following exchange took place during cross-examination of the claimant:

"Q. Now during the course of that evening did you have anything to drink that had alcohol in it?

"Mr. Tunnell: I object to that unless Mr. Wilson can produce evidence. Why, that question is just one conceived to em-

barrass and insult the witness. I don't believe he has any testimony to that effect and, if so, he should state it to this Court.

"Mr. Wilson: It so happens that the testimony did. But nevertheless,—

"Mr. Tunnell: (interrupting) You don't have it.

"Mr. Wilson: Nevertheless, I can still ask this man and he can give me the answer.

"Mr. Tunnell: You can't ask a man if he has been in jail, unless you think he has and can prove it. You can't ask him if he was drunk unless you have evidence that he was drunk.

"Mr. Wilson: I insist upon my right to ask this witness whether or not he had anything to drink that evening with alcohol in it.

"The Chairman: The Board rules that Mr. Carey, at his own discretion, may answer the question.

"Mr. Tunnell: Do you understand what the Board tells you? They say you may in your own discretion answer that question or not answer, as you see fit. You may say 'I refuse to answer,' or you may answer in your own discretion.

"The Witness: I just refuse to answer.

"Q. What was the position? A. I refuse to answer.

"Q. You refuse to answer whether or not you had anything to drink during the course of that evening with alcohol in it, is that my understanding? A. Yes, sir."

 I am of the opinion that the Board erred in permitting the claimant to refuse to answer the question regarding alcoholic beverage. It is not entirely clear that Carey was claiming his constitutional privilege against self-incrimination. It appears that his attorney was claiming for him something akin to a privilege against self-degradation. It is generally recognized that a witness must answer a question, even though to do so will

disgrace him, where his testimony on the point is material to the issue. See 58 *Am. Jur.* "Witnesses" § 35. The question was proper cross-examination and the claimant should have been compelled to give his answer.

█ Even if we assume that the privilege against self-incrimination was properly claimed by Carey, personally[1] and clearly, there was error in allowing the privilege. It is well established that when a witness testifies as to a fact or incident without invoking his privilege against self-incrimination, he thereby waives that privilege with respect to the details and particulars of the fact or incident. See *U. S. v. St. Pierre*, 2 *Cir.*, 132 *F.* 2d 837, 147 *A. L. R. p.* 255, *et seq.*

██ There are two reasons usually given to support this theory of waiver of the privilege against self-incrimination. First, in the interest of justice, the trier of fact is entitled to a full statement of the witness' knowledge of matters concerning which he testifies. Thus, when a witness has sworn to tell the whole truth and has commenced to testify as to a fact or incident within his knowledge, he cannot be permitted to withhold particulars thereof under a claim of privilege made for the first time upon cross-examination. Secondly, when a witness commences to testify as to a fact or incident without asserting his privilege, he must be deemed to have done so with knowledge that a full disclosure of the particulars thereof would tend to incriminate him. Thus, he must be considered to have waived his privilege when he commences to testify and will not be permitted to defeat the right of full and complete cross-examination by invoking the privilege.

In *Roddy v. Finnegan*, 43 *Md.* 490, the prevailing view was well expressed as follows:

"The witness ordinarily has the privilege of declining to answer a question that might subject him to criminal prosecution; but this he can waive. It is the privilege of the party.

---

[1]See *Mumford v. Croft*, 8 *Terry* 464, 93 *A.* 2d 506.

Where he is both party and witness for himself, he must be held on his cross-examination as waiving the privilege, as to any matter about which he has given testimony in chief. Having testified to a part of the transaction in which he was concerned, he is bound to state the whole. * * *."

The rule as to waiver of the privilege against self-incrimination is stated at 58 *Am. Jur.* "Witnesses" § 95 as follows:

"* * * according to the weight of American authority, a witness who, in his direct examination, voluntarily opens an account of a transaction will, on his cross-examination, be compelled to complete the narrative notwithstanding his claim of privilege from testifying; he will not be allowed to state a fact and afterward refuse to give the details. The objection that an answer to a question asked would tend to incriminate the witness must, therefore, be made at the threshold of the examination. He may not wait and answer a part and then refuse to answer other questions legitimate to a cross-examination. A contrary rule, it has been said, would sanction the obvious injustice of permitting a person to waive his privilege under the constitutional provisions and give testimony to his advantage, or the advantage of his friends, and at the same time and in the same proceeding assert his privilege and refuse to answer questions that are to his disadvantage or the disadvantage of his friends."

By the explicit terms of the Statute, the claimant is not entitled to benefits under the Workmen's Compensation Law if his injuries resulted from intoxication. 19 *Del. C.* § 2353. Thus, the question, which the claimant was permitted to avoid, is of extreme importance and the Employer should have been permitted full and complete cross-examination upon this phase of the case.

Accordingly, it is held that there was error in permitting the claimant to refuse to answer the question regarding alcoholic beverage and, for that reason, the award must be reversed and the cause remanded for further hearing.

■ If, upon rehearing, the claimant persists in his refusal to answer material questions regarding the issue of intoxication, the Board may strike all of the claimant's testimony regarding the accident, with the result that his claim for compensation would be unsupported and, therefore, would be denied. See 58 *Am. Jur.* "Witnesses" p. 56; 147 *A. L. R.* pp. 270-273.

One of the contentions urged by the Employer, both before the Board and upon this appeal, was based upon the following provision of the Workmen's Compensation Law, 19 *Del. C.* § 2353(b):

"If any employee be injured * * * because of his wilful failure or refusal * * * to perform a duty required by statute, he shall not be entitled to * * * compensation or * * * service under the compensatory provisions of this chapter."

The Employer contends that the claimant wilfully violated State penal laws governing speeding and reckless driving and that, therefore, the claimant is barred by the Statute from recovery of compensation.

The Board failed to make findings or to announce conclusions upon this issue.

■ In view of the clear prohibition of the Statute, it is held that the claimant is not entitled to compensation if he wilfully violated the Motor Vehicle Law governing speed or reckless driving and if such violation was the proximate cause of the accident. *Aetna Life Ins. Co. v. Carroll,* 169 *Ga.* 333, 150 *S. E.* 208; cf., *King v. Empire Collieries Co.,* 148 *Va.* 585, 139 *S. E.* 478, 58 *A. L. R.* 193; cf., *Sloss-Sheffield Steel & Iron Co. v. Nations,* 236 *Ala.* 571, 183 *So.* 871, 119 *A. L. R.* 1403; 1 *Larson on Workmen's Compensation Law* § 35.10, *et seq.*; 6 *Schneider on Workmen's Compensation* § 1598, *et seq.*

In this connection, there are four possible questions to be decided:

1) Did Carey violate the speed Statute?

2) Did Carey violate the Statute governing reckless driving?

3) If he violated either or both of such Statutes, was the violation "wilful"?

4) If there was a wilful violation, was it the proximate cause of the accident?

■ Since the case must be remanded for the reason heretofore stated, and since some or all of the above questions must be decided in order to dispose of the Employer's contentions, the remand is for the further purpose of enabling the Board, as the trier of fact, to complete the record by deciding the foregoing questions and by announcing conclusions in accordance with its findings.

■ I find no merit in the Employer's contentions that the accident did not arise out of the employment or during the course of the employment. I find that there is evidence to support the Board's conclusion that the claimant's injury was not the result of "deliberate and reckless indifference to danger". See 19 *Del. C.* § 2353(b).

A certified copy of this Opinion will be filed forthwith by the Prothonotary with the Industrial Accident Board.