141 So.2d 378

**STATE of Louisiana, through DEPARTMENT OF HIGHWAYS,**

v.

**Elizabeth L. BRADFORD.**

No. 45567.

Nov. 6, 1961.

On Rehearing April 30, 1962.

Dissenting Opinion May 8, 1962.

Rehearing Denied June 4, 1962.

3. See, State v. Guagliardo, 146 La. 949, 84 So. 216.

D. Ross Banister, Glenn S. Darsey, Brunswig Sholars, Baton Rouge, for plaintiff-relator.

Frank H. Peterman, A. M. D'Angelo, Alexandria, for respondent.

SUMMERS, Justice.

Mrs. Elizabeth L. Bradford is resisting the procedure adopted for the expropriation of her property by the State Department of Highways. The Department seeks a servi-

tude affecting 14.97 acres of her land from which they will remove dirt to be used in connection with a highway project located about 2,200 feet away. The excavation will result in what is known as a borrow pit eight to ten feet in depth extending over the entire 14.97 acres. To accomplish this result the Department has availed itself of legislation which provides for the acquisition of "property, including both corporeal property and servitudes" by a "Declaration of Taking." It is contended that in such a case as this the Department should be compelled to proceed by conventional expropriation proceedings.

LSA–Civil Code Article 491 defines ownership as " * * * the right to use, to enjoy and to dispose of one's property in the most unlimited manner * * *." The first law of society being that the general interest shall be preferred to that of individuals, the rights conferred by Article 491 are restricted by the declaration contained in Article 2626 that every individual who possesses any particular property is tacitly subjected to the obligation of yielding it to the community, whenever it becomes *necessary* for the general use. This right of eminent domain, sometimes referred to as the government's right to compulsory taking without the consent of the owner, is recognized to be inherent in the

sovereign. It is the power to take private property for public use essential to any well-ordered society, without which the establishment of public facilities such as roads and other works would be unduly impeded. Nevertheless, certain limitations on this power are imposed by the Federal and State Constitutions.

In Louisiana the constitutional restraint upon the acknowledged sovereign authority to take property without the consent of the owner is embodied in Article I, Section 2, LSA–Const., as follows: "No person shall be deprived of * * * property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid." Undoubtedly because of the vexation of the restraint imposed *in certain cases* by the due process clause contained in this article, which required a judicial determination of the necessity for the taking, and the delays incident to that requirement,[1] a constitutional amendment was enacted creating an exception to this restraint. This amendment permits what is sometimes called a "quick taking" of private property for highway purposes, dispensing with the requirement of prior adjudication of the question of necessity for the taking, thereby relaxing

1. State through Department of Highways v. Macaluso, 235 La. 1019, 106 So.2d 455; Charles Tolmas, Inc. v. Police Jury of the Parish of Jefferson, 231 La. 1, 90 So. 2d 65; DeBouchel v. Louisiana Highway Commission, 172 La. 908, 135 So. 914.

the due process requirements. Its language is as follows:

"The Legislature shall have authority to authorize the taking of property for *highway purposes by orders rendered ex parte in expropriation suits prior to judgment therein* provided that provision be made for deposit before such taking with a court officer for the amount of appraisals of the property so taken and damages to which the owner thereof may be entitled, if any, which appraisals may be made in such manner as may be provided by law either before or after institution of suit, and need not be by judicially appointed appraisers." (Italics ours.) Article VI, Sec. 19.1, Louisiana Constitution.

To implement this exception to the constitutional limitation on its power of eminent domain, and to delegate the sovereign right of expropriation vested in it, the Legislature enacted LSA–R.S. 48:441–460, in 1954, providing for expropriation by the Department of Highways by a "Declaration of Taking." This legislation permits taking —including possession and title—of "property, including both corporeal property and servitudes", for *highway purposes* prior to judgment in the trial court. The bases of this procedure are resolutions of the Highway Board declaring the taking to be necessary, certain certificates of highway officials to be discussed later, and depositing in the registry of the court the amount of the esti-

mated value of the property taken. The constitutionality of this legislation has been upheld by this Court. State, Through the Department of Highways v. Guidry, 240 La. 516, 124 So.2d 531; State, Through the Department of Highways v. Macaluso, et al.. 235 La. 1019, 106 So.2d 455.

In 1942, prior to the adoption of the constitutional amendment and the enabling legislation referred to above, the Legislature had provided that the Department of Highways might "acquire by purchase, lease, donation, or expropriation and may operate any gravel bed, fill or rock deposit, marble or granite quarry, *or land from which earth can be obtained,* or other natural resources or deposits susceptible of being used for the construction or maintenance of state highways or bridges, if the *needs* of the state in the construction and maintenance of highways will be best served by the acquisition." (Italics ours.) LSA–R.S. 48:222. This authority, however, was to be exercised under the general expropriation laws which permitted the property owners to judicially contest the necessity for the taking.

Mrs. Bradford contends that the quoted constitutional amendment and its enabling legislation (LSA–R.S. 48:441–460) by their language limit this "quick taking" procedure to "highway purposes", which are highway rights-of-way, strictly speaking, and the "quick taking" procedures do not have the effect of abrogating the conven-

tional expropriation proceedings relating to natural resources or deposits (borrow pits) contemplated in connection with LSA–R.S. 48:222 and in LSA–Civil Code Article 2629 et seq. She asserts that where the Department is expropriating "land from which earth can be obtained" which is, in effect, a borrow pit as herein considered, ordinary expropriation procedure is required and the "quick taking" or "Declaration of Taking" is not available, the latter being available only for highway rights-of-way.

The legislation upon which the Highway Department relies is LSA–R.S. 48:441–460, which was added to the Revised Statutes by Act 107 of 1954 and is designated as Part XVIII thereof. It provides for expropriation by a "Declaration of Taking" heretofore mentioned which differs from the general expropriation law in that under authority of the former title is vested in the Department of Highways prior to judgment in the trial court, and without a judicial determination of the necessity for the taking; whereas, under general expropriation laws of the State compensation must be paid [2] and the necessity for taking must be established and adjudicated before title is vested in the expropriating authority. It is to be noted that the Declaration of Taking Statute (LSA–R.S. 48:441–460) does not repeal either expressly or by implication the provision of LSA–R.S. 48:-222, which is the authority for expropriating borrow pits under the procedure established by the general expropriation laws of the State.

The whole controversy resolves itself into a determination of the meaning of "highway purposes" as contained in the constitutional and statutory authority under which the Department is proceeding.

The real purpose Mrs. Bradford seeks to accomplish hereby is to obtain a judicial review of the necessity for the taking of her property. Apparently relying upon the principle that civil tribunals are the natural guardians of private property, it is urged that depriving her of this judicial determination of the necessity for the taking is to deny due process of law provided for in the general expropriation laws of our State and guaranteed by Article I, Section 2, of the Constitution of Louisiana; that the due process requirement was not relaxed insofar as borrow pits are concerned.

In support of the contention that the "quick taking" or Declaration of Taking Statute (LSA–R.S. 48:441–460) does not contemplate the taking of property located some distance from the highway right-of-way to provide dirt for the construction of a highway, Mrs. Bradford submits that the language of the Declaration of Taking Statute requires, in connection with the proceedings which form the basis for the

2.  La.Const. art. I, Sec. 2; LSA–Civil Code art. 2629 et seq.

taking, a certificate signed by the chief engineer declaring that he has fixed the "width of right-of-way" sufficient in his judgment to provide presently and in the future for the "public interest, safety and convenience." Reference is also made in that statute to certificates of the director, chief engineer, road design engineer, and, if appropriate, the bridge design engineer, that the "location" and "design" of the "proposed improvement are in accordance with the best modern practices adopted in the interest of the safety and convenience of the traveling public." Mrs. Bradford maintains that this language corroborates her argument that the statute applies only to the taking of highway rights-of-way and not to the taking of borrow pits entirely removed from the highway right-of-way, such as is sought in the case at bar. Otherwise, the certificates which are required to support the taking would not have referred specifically to "width of right-of-way" and "location" and "design" of the proposed improvement or "provide presently, and in the future for the public interest, safety and convenience." It is clear that a borrow pit is not an "improvement" in the context in which that word is used in the contested statute, nor does reference to the public interest, safety and convenience contemplate the vaguest reference to borrow pits. These certificates which have reference to the property to be taken relate to highway improvements as such and not to a "bor-

row pit" far removed from the proposed highway as in the case at bar—an area from which dirt is to be removed and thereafter abandoned by the Department of Highways. What is inferred from this observation is that inasmuch as no certificate of an engineer or other person concerning borrow pits, or other similar type acquisition, is mentioned in the act, borrow pits were not contemplated in its enactment. The argument is sound.

The use of "highway" in the constitutional amendment and the statute before us, we conclude, refers to a main road or thoroughfare; hence, a road or way open to the use of the public. This is a common, accepted definition. A highway is understood to mean " * * * every way or place of whatever nature open to the use of the public for the purpose of vehicular traffic." LSA–R.S. 32:1(8); LSA–R.S. 45:162(8). Under Title 48 of the Revised Statutes, in which the Declaration of Taking Statute appears, " 'Highway' means a public way for vehicular, mounted, and pedestrian traffic, including the entire area dedicated thereto and the bridges, culverts, structures, appurtenances, and features necessary to or associated with its purposes." LSA–R.S. 48:1(11).

Expropriation laws are "special and exceptional in character, in derogation of common right[s], and as such must be strictly construed." Orleans-Kenner Electric Ry. Co. v. Metairie Ridge Nursery Co., 136

La. 968, 68 So. 93, 95: See, also, La. Highway Commission v. Cormier, 13 La.App. 459, 128 So. 56; Heppe v. State, 162 Neb. 403, 76 N.W.2d 255; 1 Lewis on Eminent Domain, Sec. 388 (3d ed.); 29 C.J.S. Eminent Domain § 22; 50 Am.Jur., Statutes, Sec. 400.

Nichols', The Law of Eminent Domain, Vol. 1, Sec. 3.213(1), citing Orleans-Kenner Electric Ry. Co. v. Metairie Ridge Nursery Co., supra, declares in referring to the necessity for strictly construing statutes granting the power of eminent domain:

> "Even when the power has been expressly granted, the grant, itself, and the extent thereof will be construed strictly against the grantee. The latter will not be allowed to take the lands of another unless such right comes clearly and unmistakably within the limits of the authority granted. Whatever is not plainly given is to be construed as withheld."

In 18 Am.Jur., Eminent Domain, Sec. 26, the rule relative to statutory construction in this case is stated thus:

> "A grant of the power of eminent domain, which is one of the attributes of sovereignty most fraught with the possibility of abuse and injustice, will never pass by implication; and when the power is granted, the extent to which it may be exercised is limited to the express terms or clear implication of the statute in which the grant is contained. In other words, statutes conferring the power must be strictly construed. Clear legislative authority must be shown to justify the taking. Authority cannot be implied or inferred from vague or doubtful language. When the matter is doubtful it must be resolved in favor of the property owner."

These fundamental principles of construction relating to statutes granting powers of eminent domain have received almost universal acceptance in this country.[3]

The constitutional amendment which authorized the Legislature to *take property for highway purposes* and the enabling legislation adopted in conformity there-

---

3.  United States v. 2,005.32 Acres of Land, D.C., 160 F.Supp. 193, United States v. 40 Acres of Land, 17 Alaska 473, 160 F.Supp. 30; Alabama: Smith v. City Board of Education of Birmingham, Ala., 130 So.2d 29, Blanton v. Faberstrom, 249 Ala. 485, 31 So.2d 330, 172 A.L.R. 128; Arkansas: Hampton v. Arkansas State Game & Fish Commission, 218 Ark. 757, 238 S.W.2d 950; Connecticut: Algonquin Gas Trans. Co. v. North Haven Fair Ass'n, 20 Conn.Supp. 51, 121 A.2d 872, City of Middletown v. F. L. Caulkins Automobile Co., 19 Conn.Supp. 45, 109 A. 2d 888; Delaware: State ex rel. Sharp v. 0.6878 Acres of Land, 9 Terry 402, 105 A.2d 205; Florida: Orange County v. Fordham, 160 Fla. 259, 34 So.2d 438, Peavy-Wilson Lumber Co. v. Brevard County, 159 Fla. 311, 31 So.2d 483, 173 A.L.R. 168; Georgia: McGreggor v. W. L. Florence Const. Co., 208 Ga. 176, 65 S. E.2d 809; Illinois: Illinois Cities Water Co. v. City of Mt. Vernon, 11 Ill.2d 547,

with apply to property needed for highway purposes as such, that is, land and servitudes affecting land across which highways traverse. We do not understand this "quick taking" procedure permitted by the Constitution to be a general authorization to the Legislature and Highway Department, to whom the Legislature has delegated that authority, to take by that method every conceivable type of corporeal property needed in the construction and maintenance of highways for this sought-after authority would be too far-reaching and is not to be implied without a clear and express constitutional grant. Such a construction as the Department of Highways seeks would erode into meaningless language the constitutional and statutory safeguards heretofore established circumscribing the sovereign power of eminent domain.

Under the cloak of such authority this administrative agency of the government could take whatever property they considered needful in their sole discretion, so long as it was for a highway purpose, without according to the affected parties the opportunity to be heard on the question of the necessity therefor. Under this authority it is not difficult to visualize that the Department may enter into possession of and take title to any number of industries, manufacturers, vehicles, machines, forests, timber stocks, cement manufacturing plants, oil producing facilities, oil refineries, steel, iron and other building materials or equipment in the raw or manufactured form with the only restraints being that estimated compensation be deposited and they be used for a public purpose, that is, highway construction. For it cannot be denied that all

144 N.E.2d 729, 68 A.L.R. 384; Forest Preserve Dist. of Cook County v. Wike, 3 Ill.2d 49, 119 N.E.2d 734; Missouri: State ex rel. Missouri Water Co. v. Bostian, Mo., 280 S.W.2d 663; Nebraska: Heppe v. State, 162 Neb. 403, 76 N.W.2d 255, Application of Loup River Public Power Dist., 157 Neb. 652, 61 N.W.2d 213; New Jersey: Board of Education Employees' Pension Fund v. Hess, 20 N.J.Super. 605, 90 A.2d 140; New York: Society of the New York Hospital v. Johnson, 5 N.Y.2d 102, 180 N.Y.S.2d 287, 154 N.E.2d 550, Decker v. People, 23 Misc.2d 90, 195 N.Y.S.2d 197; North Dakota: Wallentinson v. Williams County, N.D., 101 N.W.2d 571, Board of Education of City of Minot v. Park District, N.D., 70 N.W.2d 899; Ohio: McMechan v. Board of Education of Richland Township, Belmont County, 157 Ohio 241, 105 N.E.2d 270, Ohio Power Co. v. Deist, 154 Ohio St. 473, 96 N.E. 2d 771; Oklahoma: City of Cushing v. Gillespie, 208 Okl. 359, 256 P.2d 418, 36 A.L.R.2d 1420; South Carolina: Cain v. South Carolina Public Service Authority, 222 S.C. 200, 72 S.E.2d 177; Tennessee: Vinson v. Nashville, Chattanooga & St. Louis Railway, 45 Tenn. App. 161, 321 S.W.2d 841; Texas: Sabine River Authority of Texas v. McNatt, Tex.Civ.App., 337 S.W.2d 325; Utah: Bertagnoli v. Baker, 117 Utah 348, 215 P.2d 626; Virginia: Dillon v. Davis, 201 Va. 514, 112 S.E.2d 137, Bristol Redevelopment and Housing Authority v. Denton, 198 Va. 171, 93 S.E.2d 288; Washington: State v. Superior Court for King County, 33 Wash.2d 76, 204 P.2d 514; Wisconsin: Schumm v. Milwaukee County, 258 Wis. 256, 45 N.W.2d 673.

of these things are corporeal property used in highway construction, either directly or indirectly, such as the borrow pit sought in this case. The only issue permitted to be raised by a party resisting such a taking would be the question of the adequacy of the compensation for the property taken. The necessity for the taking—involving such issues as the availability of these materials and products in the open market by conventional purchase, lease, etc., for fair prices, in keeping with the cost of expropriation, or whether the taking is simply a matter of convenience to the expropriating authority as distinguished from necessity— would be foreclosed. River & Rail Terminals v. Louisiana Ry. & Nav. Co., 171 La. 223, 130 So. 337; City of New Orleans v. Moeglich, 169 La. 1111, 126 So. 675; Kansas City, S. & G. Ry. Co. v. Meyer, 10 La.App. 521, 120 So. 700.

The Highway Department replies that such an interpretation is farfetched and implies a thing the Department would not do, but history as we have observed it in respect to such matters records examples which refute the substance of that reply. The Supreme Court of Florida, too, has recognized the validity of our observation in these words: "Our American courts have been ever alert to shield the citizen against encroachment by the sovereign as experience has shown that where a right is extended a corresponding liberty is curtailed, seldom if ever to be restored."

Peavy-Wilson Lumber Co. v. Brevard County, 31 So.2d 483, 485.

Furthermore, we observe that no sound reason has been advanced and none occurs to us for requiring this "quick taking" procedure in the acquisition of borrow pits, gravel beds, fill or rock deposits, marble or granite quarries or other natural resources with which borrow pits are classified in LSA–R.S. 48:222 such as the rationale set forth in State v. Guidry, supra, for the taking of highway rights-of-way. In the Guidry case the Court observed:

> "Highways, of course, transverse the State from one end to the other, and from an engineering point of view it is an economical undertaking to plan their construction on a state-wide basis. When this is done it can readily be seen that to permit a judicial review and determination of each one of thousands of parcels of property necessarily taken to construct a highway, such as U. S. Highway 80, to be an expressway which spans the State from Vicksburg, Mississippi, to Waskom, Texas, would be to impede the operation and construction to a point that would completely paralyze the Department of Highways." [240 La. 516, 124 So.2d 534.]

Highways by their nature are properly designed to provide transportation from one locality to another. Within the bounds of engineering considerations and certain prac-

tical considerations such as economic feasibility, safety and convenience, a straight line between the points of beginning and ending is the most desirable route for their construction. With this tenet as a basic goal, the highway engineer is limited in his choice of routes, therefore, the lands lying in the path of the proposed highway are those required, not the lands remotely located from that area. Whereas, in his quest for materials and equipment for the construction of highways, the builder is not limited by this geographical consideration. He is free to seek and obtain these requirements wherever he might find them. Failure to find them in one locality is not fatal to the highway project for they can be obtained elsewhere, just as materials for constructing highways have always been available in the past, almost invariably through conventional purchase and, failing in conventional acquisition, expropriation under LSA–R.S. 48:222 is available for borrow pits and the other materials there enumerated. But in the case of the highway right-of-way, refusal to permit a "quick taking" may operate to delay the entire project, so related is every portion of a highway to the other, like a link in a chain.

The Department will urge that to require them to expropriate materials by the conventional method, or to purchase them on the open market when expropriation by quick taking would be more expeditious, is to unduly inconvenience and impede their operations. Implicit in this attitude is a failure to recognize the demands made by modern society upon the property rights of the individual and a lack of recognition of the precept that society should bear the costs and inconvenience incident thereto, and the full burden of those demands should not be borne by the individual affected.

Thus it is obvious that the policy considerations supporting a quick taking of highway rights-of-way are not applicable to a quick taking of materials used in the construction of the highways. As the Court observed in the Guidry Case: "We have to consider these factors when we seek to determine the intent and meaning of the constitutional amendment and legislative act referred to."

The property owner's right to require an inquiry into whether the power of eminent domain being exercised by the Department of Highways is arbitrary or at variance with its delegated power so as to inflict unnecessary damage upon the property owner has not been foreclosed by Article VI, Section 19.1 of the Constitution and LSA–R.S. 48:441–460.

This tribunal being the natural guardian of private property finds this is a proper occasion to assert that guardianship and deny to the Department of Highways the construction it seeks to the constitutional amendment and the statute in question.

(Article VI, Section 19.1 and LSA–R.S. 48:441–460.) We are of the opinion that the people in adopting the amendment and the Legislature in adopting the statute which are before us did not intend the result which the Department of Highways seeks here, nor does the very language of these enactments permit that result.

This holding does not render nugatory the constitutional amendment and legislative enactment before us but confines their effect within reason and the bounds of their declared and expressed intention.

Accordingly, the judgment is affirmed.

SANDERS, Justice (dissenting).

The sole question presented in this case is whether the Louisiana Department of Highways can employ Act No. 107 of 1954 (LSA–R.S. 48:441–460) to expropriate a servitude on land to obtain soil for use in the construction of a nearby highway.

The power of expropriation of the Department of Highways is defined by LSA–R.S. 48:217 [1] and LSA–R.S. 48:222.[2] These sections are substantive and basic. They specify the property which may be expropriated for highway purposes. The property includes servitudes on land from which earth can be obtained. These sections are not abrogated or modified by Act No. 107 of 1954.

Louisiana Act No. 107 of 1954 is procedural only. Under the authority of Article VI, Section 19.1 of the Constitution, it provides an additional and more expeditious method of expropriation. Title is vested in the Department during the initial stage of the proceeding. The right to a hearing both as to the compensation and the public purpose of the taking is preserved.[3] Being procedural, the statute does not purport to define the power of expropriation or to make a specific reiteration of the property subject to it. The words, "property", in the constitutional provision, and "property, including both corporeal property and servitudes", in the statute, are generic and non-definitive. These refer-

---

1. LSA–R.S. 48:217: "The department may, without any competitive bidding, acquire any immovable property, or the use thereof, including servitudes, lands, and improvements on lands, necessary for the right of way of any highway included in the state highway system or any appurtenance thereto or for any of the purposes of this Chapter by expropriation, by donation, by purchase, by exchange, or by lease."

2. LSA–R.S. 48:222: "The department may acquire by purchase, lease, donation, or expropriation and may operate any gravel bed, fill or rock deposit, marble or granite quarry, or land from which earth can be obtained, or other natural resources or deposits susceptible of being used for the construction or maintenance of state highways or bridges, if the needs of the state in the construction and maintenance of highways will be best served by the acquisition."

3. LSA–R.S. 48:445, 447, 451; State, Through Department of Highways v. Macaluso, 235 La. 1019, 106 So.2d 455; State, Through Department of Highways v. Guidry, 240 La. 516, 124 So.2d 531.

ences serve only as a peg on which to hang the procedural language. For the ascertainment of the property subject to expropriation, the statute must be construed with the substantive law, of which it is an appendage. Its procedures apply to the property already described in this basic law. It thus applies to land from which earth can be obtained. Such land, because of the very nature of its use, is not located in the right-of-way.

While use for right-of-way is one of the highway purposes for which land can be expropriated, it is not the only one. Its use for obtaining soil employed in construction is likewise an important highway purpose.

It is not within the province of the Court to inquire into the wisdom of the procedural statute. That is a matter for legislative determination.

In my opinion, Act No. 107 of 1954 is available for the expropriation of the servitude in the instant case.

I respectfully dissent.

### ON REHEARING

McCALEB, Justice.

A rehearing was granted herein to reconsider our ruling that Article 6, Section 19.1 of the Constitution and Act 107 of 1954 (R.S. 48:441–460) do not authorize employment of the "quick taking" method for the expropriation of a servitude from which dirt fill may be obtained.

The salient facts are that the Department of Highways, seeking to take a temporary servitude on approximately 15 acres of Mrs. Bradford's land in order to extract dirt fill for use in the construction of a highway between Alexandria and Pineville, proceeded under the "quick taking" statute (R.S. 48:441–460) and obtained an expropriation order from the district judge. Mrs. Bradford subsequently appeared and filed a motion to vacate the order on various grounds. The district judge sustained this motion, being of the opinion that the statute allowing ex parte proceedings applied only to expropriation of land for highway rights of way and that, since Mrs. Bradford's land was not within the right of way, the expropriation order was invalid. The Department of Highways then sought relief in the Court of Appeal, Third Circuit, but its application was denied. Thereafter writs were granted here and, upon original hearing, being substantially in agreement with the trial judge, we affirmed his ruling.

The rationale of our opinion was that the authority granted the Legislature by Section 19.1 of Article 6 of the Constitution, to provide for " * * * the taking of property for highway purposes by orders rendered ex parte in expropriation suits prior to a judgment therein" did not encompass the taking of any property outside the right of way of the highway construc-

tion project because, by giving to the constitutional and statutory provisions a strict construction, applicable to statutes in derogation of common rights, the phrase "for highway purposes" must be accorded this restrictive scope as the people and the Legislature did not intend that property of any nature outside the highway right of way should be taken without the necessity for the taking being first shown.

■ It is a rudimentary tenet of statutory construction in this State that "When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit." Article 13 of the Civil Code.

Section 19.1 of Article 6 of the Constitution states "The Legislature shall have authority to authorize the taking of *property for highway purposes* by orders rendered ex parte in expropriation suits prior to judgment therein * * *." (Emphasis ours.)

■ This language, albeit broad in scope, is clear and explicit. Hence it is not subject to construction and should be applied according to the most usual signification in which the words used are generally understood. Article 14 of the Civil Code. The word "property" includes all property which is subject to the power of eminent domain under our law, i. e.,—immovables (see R.S. 48:217; R.S. 48:222; R.S. 48:223), wherever situated—provided the taking is for a highway *purpose,* i. e., for use in the building, improvement, maintenance and repair of the State highway system (see R.S. 48:21), and not whether the land to be taken is or is not part of the highway right of way. If the framers of Section 19.1 had intended that the authorization to the Legislature to expropriate property by ex parte orders was to be limited to the property forming part of the highway right of way, it would have been easy to thus provide by appropriate language. Indeed, the very fact that the language used is of broad scope must be considered by us as a cogent reason for not restricting the meaning of the law to categories not plainly indicated by the lawmaker.

And this is the result, notwithstanding the employment of the rule that laws in derogation of the common right are to be strictly construed. For, even under this doctrine of construction the Court is without warrant to substitute for the phrase "for highway purposes," as used in the constitutional article, the phrase "for highway right of way purposes," as contended by Mrs. Bradford. See Article 20 of the Civil Code.[1] On the contrary, assuming that we are permitted to search for legislative in-

1. It provides—"The distinction of laws into odious laws and laws. entitled to favor, with a view of narrowing or extending their construction, can not be made by those whose duty it is to interpret them."

tent in its use of the phrase "for highway purposes", it appears logical to examine the nature and kind of property the highway department was given the right to expropriate prior to adoption of Section 19.1 of Article 6. The original constitutional mandate (Section 19 of Article 6, as amended by Act 204 of 1926), that the Legislature shall provide for the establishment and maintenance of a system of hardsurfaced State Highways and bridges, declared that the Legislature shall authorize the acquisition, by expropriation or otherwise, "of rights of way for highways, and drains therefor" and may provide "for the purchase or expropriation of property necessary or useful for the purpose of building or maintaining highways * * *."

Thus, by the vesting of specific authority in the Legislature to expropriate property for highway rights of way and drainage and also for any useful purpose in building or maintaining highways, it is now manifest to us that, when Section 19.1 of Article 6 provides for expropriation of property *for highway purposes* by ex parte orders, it means exactly what it says, and the language used should not be construed, under the guise of interpretation, to extend only to property within the path of the highway right of way.

It is to be borne in mind that Section 19.1 of Article 6 is nothing more than a constitutional authorization to the Legislature to enact an ex parte expropriation law for the taking of property for highway purposes. It, like the statute passed under its sanction (R.S. 48:441–460), is purely procedural in nature. Neither it, when read in the light of Section 19 of Article 6, nor the "quick taking" statute authorize the taking of any property for highway purposes, the expropriation of which has not already been provided for by law (see, as above noted, R.S. 48:217, R.S. 48:222 and R.S. 48:223).

▆▆ The statute, Act 107 of 1954 (R.S. 48:441–460), as its title plainly indicates simply provides " * * * an additional method by which the Department of Highways, may expropriate property for highway purposes prior to judgment in the trial court by declaration of taking, * * *." Being entirely procedural, it does not specify the nature or type of property which may be taken but only provides another method of taking.[2] Therefore, in determining the right to expropriate, the substantive law must be consulted.[3] It is for

---

2. For example, R.S. 48:441 reads "In any suit for the expropriation of property, * * * the department may acquire the property prior to judgment in the trial court in the manner provided in this Part."

▆▆▆▆

3. In this case, R.S. 48:222 vests the Department with authority to expropriate land from which earth can be obtained for the construction and maintenance of highways.

this reason that the statute neither repeals, nor is in conflict with, any of the previous laws providing for expropriation of property for highway purposes. This, the statute makes crystal clear—for R.S. 48:458 declares:

"The right to take possession and title in advance of final judgment, as provided herein, is *in addition* to any right or authority conferred by the laws of this state under which expropriation proceedings may be conducted, and shall not be construed as abrogating, eliminating, or modifying any such right or authority." (Emphasis ours.)

We are also convinced that there is no substance in Mrs. Bradford's contention that two of the requirements of the expropriation petition, listed in R.S. 48:442, indicate a legislative intent to limit the scope of the "quick taking" statute to acquisition of property for right of way purposes only. This contention has reference to the second requirement that the chief engineer must certify that he has fixed the width of right of way of the highway in a manner sufficient to provide presently and in the future for the public interest, safety and convenience and the third requirement that the director, chief engineer and road design engineer must certify that the location and design of the proposed improvement are in accordance with best modern practices adopted in the interest of the safety and convenience of the traveling public.

These requirements of the recitals of the petition furnish no ground for a conclusion that the statute's scope extends only to expropriation of land for a right of way. They appear to be solely for the purpose of having the Department Officials certify that they are performing their duty with respect to the taxpayers and the traveling public, in that the plans and specifications for the building of the new project are adequate to provide a modern highway which will not only accommodate present needs but also those of the foreseeable future.

Counsel for Mrs. Bradford further assert that Section 19.1 of Article 6 of the Constitution and R.S. 48:441–460, as presently construed by us, offends the due process clause of the State and Federal Constitutions (Section 2 of Article 1 of the Louisiana Constitution and Section 1 of the Fourteenth Amendment of the Constitution of the United States) in that it deprives Mrs. Bradford of a right to a hearing on the necessity for the taking by authorizing the transfer of title by ex parte order.

This argument has been heretofore fully considered and disposed of adversely to Mrs. Bradford's position in State, Through Department of Highways v. Macaluso, 235 La. 1019, 106 So.2d 455 and State, Through Department of Highways v. Guidry, 240 La.

516, 124 So.2d 531. Hence, additional comment would be superfluous.

Another point urged by counsel is that the "quick taking" method authorized by Section 19.1 of Article 6 of the Constitution, which was adopted in 1948, has been withdrawn by the people because another Section, 19.1 of Article 6, relative to the Department of Highways, was adopted in 1952 and that the subsequent amendment effectually supersedes the first Section 19.1.

■ We find no merit in this proposition. The new section, also numbered 19.1, relates exclusively to the creation of the Board of Highways, its powers, duties and functions. Manifestly, it was not intended to supersede, nor does it repeal by implication, the initial Section 19.1, which has solely to do with authorization of a "quick taking" method for expropriating property for highway purposes. The numbering of the amendment adopted in 1952 as Section 19.1 was obviously a clerical error.

For the reasons assigned, the judgment of the district court recalling its expropriation order of October 1, 1960, is annulled and reversed. It is now ordered that defendant's motion to vacate the ex parte order of expropriation be and it is overruled, said expropriation order is reinstated, and the case is remanded for further proceedings in accordance with law and consistent with the views herein expressed.

HAMITER and HAMLIN, JJ., dissent being of the opinion that one original decree should be re-instated and made final.

SUMMERS, J., dissents from the opinion and decree on rehearing and adheres to the decree on original hearing and assigns additional reasons.

SUMMERS, Justice (dissenting from opinion and judgment on rehearing).

The opinion of the majority on rehearing at the outset simplifies the meaning of "highway purposes" as used in the constitutional amendment and statute in question with the statement that this language "albeit broad in scope, is clear and explicit." The reason given is that if the framers of Section 19.1 had intended that the authorization to the Legislature to expropriate property by ex parte orders was to be limited to the property forming part of the highway right-of-way, it would have been easy to thus provide by appropriate language.

In my opinion, under the circumstances of this case, it would be better to say that if the intention was to permit this quick-taking method to apply to the "operation of any gravel bed, pile or rock deposit, marble or granite quarry, or land from which earth can be obtained, or other natural resources or deposits susceptible of being used for the construction of state

highways or bridges" it would have been easy and it was necessary to thus provide by appropriate language.

By its reasoning the majority finds cause to abandon the principles of statutory construction applied and relied upon in our original opinion in this case: that is, statutes conferring the power of eminent domain should be strictly construed.

The rule of strict construction finds additional grounds for application in this case, for by abolishing the right to contest the necessity for the taking heretofore considered to be within the protection of the due process clause of the constitution, this constitutional amendment has done violence to a fundamental precept of any civil society— that no one should be judge of his own cause.

It has apparently been considered expedient to abolish this fundamental precept

in order to confer these extraordinary rights upon the Department of Highways. By vesting in that agency of the state the right to determine the necessity for the particular taking, the constitution thereby confers upon that agency the right to adjudicate its own cause and thus forsakes the rights of the individual to be heard on the question of the necessity for the taking.

I do not contend that the judiciary can dispute the right of the citizenry of this state to embody these powers in its constitution and basic law. What I do contend, however, is that such an enactment does violence to a basic precept of any civil society and its effect should be strictly limited to the clearly expressed and unequivocal meaning of the language employed.

I respectfully dissent from the judgment on rehearing.